## JONAS *v.* HIRSHBURG.

[No. 2,207.   Filed December 9, 1897.]

HUSBAND AND WIFE.—*Enticing and Alienating.—Complaint.—Sufficiency.*—A complaint by a husband for damages for alienating the affections of his wife which alleges that defendant wrongfully and maliciously alienated the affections of his wife and induced her to live separate and apart from him, is sufficient without setting out in detail the means employed, the devices resorted to, and the language used in bringing about the alienation.   *pp. 583–585.*

SAME.—*Domicile.*—The domicile of the husband is the domicile of the wife, and the law presumes they are living and cohabiting together. *p. 586.*

SAME.—*Enticing and Alienating.—Complaint.*—A complaint in an action for damages by a husband against his wife's mother for alienating the affections of his wife and causing her to live separate and apart from him need not allege that the husband and wife were living together peaceably and happily, such facts being matter in defense.   *pp. 586, 587.*

COMPLAINT.—*Damages.—Averment as to Damages.—Prayer.*—A complaint in an action for damages which concludes with the prayer:

Jonas *v.* Hirshburg.

"Wherefore, because of the premises hereinbefore set forth, the plaintiff brings this suit and demands judgment for thirty thousand dollars damages, which he has sustained because of the foregoing premises," is sufficient without an averment in the body of the complaint that the plaintiff was damaged by the acts charged against defendant. *pp. 587, 588.*

HUSBAND AND WIFE.—*Enticing and Alienating.—Complaint.—Sufficiency.*—A complaint in an action for damages by a husband for alienating the affections of his wife, and causing her to live separate and apart from him, need not aver that the plaintiff was without fault. *p. 588.*

SPECIAL VERDICT.—*Interrogatories.—Numbering.—Double Verdict.*— Interrogatories submitted by counsel in the trial of a cause should be by the court numbered, not in separate series, but as an entirety, and submitted to the jury with the instruction that each be answered and all returned as a special verdict, but where such interrogatories are numbered in two separate series they will not constitute a double verdict and by reason thereof be set aside for ambiguity and uncertainty. *pp. 592, 593.*

SAME.—*Sufficiency Of.—Husband and Wife.—Enticing and Alienating.*—A special verdict in an action for damages, brought by a husband against his wife's mother for alienating the affections of his wife and inducing her to abandon him, which finds that plaintiff and his wife were living happily and contentedly together; that defendant, who was the mother of plaintiff's wife, unlawfully, unjustly, wrongfully, and maliciously alienated the affections of plaintiff's wife from him, and enticed, persuaded and allured her to abandon him and to live separate and apart from him, and by reason of such wrongful and malicious conduct of defendant plaintiff was deprived of the aid, comfort, services, fellowship, association, society, and assistance of his wife, and sustained damage, is sufficient to sustain a judgment for plaintiff. *pp. 588–595.*

HUSBAND AND WIFE.—*Enticing and Alienating.*—A husband is entitled to his wife's society, as well as her services, and he has a cause of action against any one who induces her to leave him, or who keeps her separate and apart from him, and thus deprives him of her society and services. *p. 600.*

APPEAL AND ERROR.—*Affidavits.—Husband and Wife.—Enticing and Alienating.*—Affidavits filed in the Appellate Court, in a case brought by a husband against his wife's mother for alienating the affections of his wife, to the effect that during the pendency of the appeal the parties are living together, is not a part of the record and cannot be considered. *p. 601.*

From the Jackson Circuit Court.    *Affirmed.*

*A. N. Munden, David L. Wilson, Will A. Yearling* and *Applewhite & Applewhite,* for appellant.

*Jason B. Brown, Joseph H. Shea* and *C. B. Harrod,* for appellee.

WILEY, J.—Appellee brought this action against appellant to recover damages for alienating his wife's affections, and for causing her to live apart and separate from him, appellee's wife being the daughter of appellant. The issues being joined, the cause was tried by a jury, a special verdict returned, and judgment pronounced thereon in favor of appellee. Appellant's motion for a *venire de novo,* for judgment on the special verdict, and for a new trial were respectively overruled, and on appeal she has assigned error as follows:

First. The court erred in overruling appellant's motion for judgment upon the special verdict.

Second. The court erred in rendering judgment for the appellee on the special verdict.

Third. The court erred in overruling appellant's motion for a new trial.

Fourth. The court erred in overruling the demurrer to the amended complaint.

Fifth. The court erred in overruling appellant's motion for a *venire de novo.*

We will consider these several alleged errors in the order in which they are discussed by counsel.

First. As to the sufficiency of the complaint.

The complaint is not lengthy, and we copy literally the following: "Plaintiff complaining of said Amy Jonas, defendant, avers that the said defendant contriving, and wrongfully, wickedly, maliciously and unjustly intending to injure the said plaintiff and to deprive him of the comfort, fellowship, society, association, aid and assistance of said Sadie Hirshburg, his said wife, and to alienate and destroy her affection for

him, she, the said Amy Jonas, did on the first day of January, 1895, unlawfully, unjustly, wrongfully and maliciously tempt, entice, persuade and allure the said Sadie Hirshburg, his wife, to abandon him, his house and home, and to live away and apart from him.

"Plaintiff avers, that since the said first day of January, 1895, until the. commencement of this suit, and during all that time, defendant harbored, sheltered and cared for the said Sadie Hirshburg, his said wife, and wickedly, wrongfully and maliciously contrived to alienate the affections of the said Sadie Hirshburg from him, and maliciously persuaded and induced her to refuse to acknowledge and receive him as her husband; and thereby and because of the wrongful, malicious and wicked acts aforesaid of the said defendant, * * * the affection of the said Sadie Hirshburg * * * for him was then and thereby alienated and destroyed; and by means of the premises the plaintiff hath hitherto wholly lost and been deprived of the comfort, fellowship, society, aid, association and assistance of the said Sadie Hirshburg * * * in his domestic affairs, which he, plaintiff, during all that time ought to have had and otherwise might and would have had."

The complaint also avers that the appellee was a married man; that Sadie Hirshburg was his wife, and that appellant was her mother.

Appellant moved the court that the complaint be made more specific as to the acts charged, which motion was overruled; but as such motion and ruling are not brought into the record by bill of exceptions, they present no question for our consideration.

Appellant contends that the complaint is insufficient to withstand the demurrer, because it fails to state, in detail, the means employed by her, the devices resorted to, and the language used to induce and

cause appellee's wife to leave him, and live separate and apart from him, and which resulted in alienating her affections from him. The province of a complaint is to state and plead a fact, or facts, which constitute a cause of action. In a case of this character, the actionable fact is that appellant did or said something that alienated the affections of his wife from him, caused her to abandon him, and live separate and apart from him. It is not the province of a pleading to state the evidence of a fact, nor a conclusion of law.

Whether this actionable fact charged against appellant was the use of certain language, the promise of any money, reward, or property, or by any other means, is in our judgment wholly immaterial. The fact that she wrongfully and maliciously alienated the affection of appellee's wife, that she induced her to live separate and apart from him, and that by reason thereof he has been deprived of her association, society, aid, etc., is admitted to be true by the demurrer.

The statute in regard to the construction of a pleading is very liberal, and it provides that: "In the construction of a pleading for the purpose of determining its effects, its allegations shall be liberally construed; with a view to substantial justice between the parties," etc. Section 379, Burns' R. S. 1894 (375, Horner's R. S. 1896). See *Dickensheets* v. *Kaufman*, 28 Ind. 251; *Stone, Admr.,* v. *State, ex rel.,* 75 Ind. 235.

To say that an act was maliciously done, or a word was maliciously spoken, is the statement of a fact. Applying this rule to the allegations of the complaint, that the appellant maliciously and wrongfully enticed appellee's wife to leave him, and to live separate and apart from him, which in a case of this character, is the *gravamen* of the action, in this regard the complaint is not subject to the objection urged against it.

It is next urged that the complaint is defective, be-

cause it does not aver that appellee and his wife were living together. We do not think this objection is well taken. The domicile of the husband is the domicile of the wife, and the law presumes that they are living and cohabiting together. But aside from this presumption, we think the complaint, by a fair and reasonable inference, at least, shows that appellee and his wife were living together. The complaint charges that appellant maliciously and wrongfully enticed appellee's wife to leave him, and to live separate and apart from him. If they had not been living together then appellant could not have caused their separation; and while the complaint does not, in direct terms aver that they were living together, the following averment upon this point makes the complaint clearly sufficient, that the appellant did, "unlawfully, unjustly, wrongfully, and maliciously tempt, persuade and allure the said Sadie Hirshburg, his wife, to abandon him, his house and home and to live away and apart from him."

Appellant next contends that the complaint is insufficient, because it does not state the particular acts, or words complained of, which caused appellee's wife to abandon him, etc. This was not necessary. The same rule does not apply as in actions for libel and slander. In the latter case, the specific words spoken must be stated, because the gist of the action is the speaking or publishing certain defamatory words; while in the case before us the gist of the action is that appellant maliciously and wrongfully, caused appellee's wife to abandon him, etc.

It is further urged by appellant that the complaint is bad, because it does not charge that appellee and his wife were living together peaceably and happily. Counsel for appellant say: "For aught that appears, it may be that the wife had just cause to abandon her husband (appellee), and what appellant may have said

to her, and the inducement offered, if any, may have been for the good of the daughter, the wife, and to relieve her from the clutches of a worthless husband, and from the society of one whose moral habits and character were such as not to be fit for the society, standing, and association of the wife; and if the mother, the appellant, knew these things, and had good reason to believe them to exist, and she acted in good faith and without malice, she had a right to advise and persuade her daughter to abandon such a profligate husband." There is no merit or reason in this contention. If appellee was a profligate husband, a moral leper, and was mistreating his wife, and he was an unfit person for her to live and associate with, and the appellant, the mother of appellee's wife, acted in good faith, without malice, and what she did and said, she honestly believed to be for the good of her daughter, it would have constituted a good defense to appellee's action; but such facts have no place in a complaint, and it was not even necessary to aver that appellee and his wife were living happily and peaceably together, for the law presumes they were.

An additional objection urged to the complaint is, that it concludes by a prayer for judgment in the sum of $30,000.00, without an averment in the body of the complaint that appellee was damaged by the acts charged against appellant.

The prayer of the complaint is as follows:

"Wherefore, because of the premises hereinbefore set forth, the plaintiff brings this suit and demands judgment for thirty thousand dollars damages, which he has sustained because of the foregoing premises." This is sufficient. Appellee demands judgment for a sum named as damages he has sustained by reason of the acts of appellant, which acts he has specified in the body of his complaint, and to which he refers in his prayer.

There is no merit in this contention of appellant.

Again the appellant contends that the complaint is bad, because there is no averment that appellee was without fault, and seeks to invoke the aid of the rule in cases of personal injury, resulting from negligence. We content ourselves by saying that such rule is not applicable here, and such averment was wholly unnecessary.

The appellant's next contention is that the court erred in overruling her motion for a *venire de novo*.

For the proper consideration of this question it is necessary to have before us the material facts as they appear from the special verdict. The special verdict consisted of divers interrogatories submitted to the jury, and the answers thereto. Under the practice as it seems to have obtained, two sets of interrogatories were submitted, one prepared by the appellee and one by the appellant, and so far as the record shows, were submitted to the jury, as prepared by counsel.

The facts found by the jury, stated as briefly as possible, are as follows: That appellee and Sadie Hirshburg (*nee* Jonas) were married; that they lived together as husband and wife; that appellee made provision for his wife; that Sadie Hirshburg was the daughter of appellant; that while appellee and his wife were living at Scottsburg, appellant declared, "that she would have her, Sadie Hirshburg, she did not care where she was;" that while they were so living, appellant stated that she wanted to take Sadie back home; that appellant lived at Seymour, Indiana; that appellee and his wife started to Florida to live, and that after they started, appellant went to the P., C., C. & St. L. railway office at Seymour, and stated to the telegraph operator that she wanted to send a message to have appellee arrested and held at some point along the line of the road; that while ap-

pellee and his wife were on their way to Florida, appellant caused a telegram to be sent to the conductor of the train on which they were, asking the conductor to notify appellee's wife that Nellie Jonas, her sister, was very sick and unconscious and to come on first train, which telegram was as follows: "Party and wife got on your train at Vienna by name of Hirshburg. Please notify his wife that Nellie is very bad sick, unconscious. Tell her, her mother says come on first train sure. Answer. Her mother is going to Seymour on No. 3"; that on the day following the sending of this telegram, appellant and her daughter Nellie went to Louisville, Kentucky; that soon after appellee and his wife started to Florida, appellant said she would see that they did not live happily together. The verdict then discloses that after appellee and his wife went to Florida, and lived together there, that she returned to Seymour, Indiana, to the house of appellant. After her return, it is found that appellant said: "I have got them (appellee and his wife) apart now, and I will spend all I have to keep them apart."

It is further shown that appellee, while in Florida, and after his wife returned to Seymour, became sick; that his wife was notified thereof, and requested to go to him, and that appellant said to one Wm. K. Marshall, "that she had headed him (the appellee) off in getting his wife to go down there;" that after her return to Seymour, up to and including the trial, the appellee's wife lived with her mother, separate and apart from him; that after appellee got sick in Florida, appellant said to one Cockran, that she would not let his wife go to Florida; that she was not going to let appellee and his wife have any peace together.

The jury further found that appellant said to one Dodridge, that if she really thought appellee was sick, she would let his wife go to him; that after his return

from Florida to Seymour, appellee went to the house of appellant, and requested appellant to see his wife, and that she refused such request; that he then left her house and shortly returned with the city marshal, asked again for his wife, and she left with him, they going to a hotel, where they remained over night. We quote the following interrogatories and answers in full:

"Forty-seven. Did not the defendant, before the commencement of this action, wrongfully, unjustly, and from malicious motives, persuade the plaintiff's wife, Sadie, to abandon him and live apart from him? Ans. Yes.

"Forty-eight. Did not the defendant, before the commencement of this suit, wrongfully and from malicious motives, unjustly persuade the plaintiff's wife, Sadie, to abandon him? Ans. Yes.

"Forty-nine. Has not the defendant, Mrs. Amy Jonas, continuously since before the commencement of this suit, harbored, sheltered, and cared for plaintiff's wife, Sadie? Ans. Yes.

"Fifty. Did not the defendant, before the commencement of this suit, unjustly and from malicious motives, cause and persuade the plaintiff's wife to live apart from him? Ans. Yes.

"Fifty-one. Has not the defendant wrongfully, intentionally, and with ill will toward the plaintiff, induced the plaintiff's wife, Sadie, to live with the defendant at her home * * * in Seymour, Indiana, continuously since before the commencement of this suit? Ans. Yes.

"Fifty-two. Has not the defendant, from malicious motives, wrongfully alienated the affections of the plaintiff's wife, Sadie, from him? Ans. Yes.

"Fifty-three. Because of the wrongful and evil acts and conduct of the defendant, intentionally and pur-

posely exerted by the defendant upon the plaintiff's wife, has not plaintiff been deprived wholly of the comfort, services, fellowship, society, association, and assistance of his wife, Sadie?    Ans. Yes.

"Fifty-four.    Did the defendant, by means of her wrongful acts, intentionally done toward the plaintiff, cause the plaintiff's wife to abandon and live apart from him?    Ans. Yes.

"Fifty-five.    Did the defendant  *  *  *  by wrongful acts of influence over plaintiff's wife, Sadie, cause her to live apart from him?    Ans. Yes.

"Fifty-eight.    Does the fair preponderance of the evidence show that the plaintiff's wife neglected to live with him because of the defendant's wrongful influence exerted over her for that purpose?    Ans. Yes.

"Fifty-nine.    Did plaintiff, Wesley Hirshburg, and Sadie Hirshburg live together as husband and wife, in a contented manner, until defendant's exerted influence was brought to bear upon that relation of husband and wife?    Ans. Yes."

The jury further found that when appellee and his wife were married, he was over the age of twenty-one years, and she over the age of eighteen; that while they were living together in Florida, the appellant sent his wife money with which to pay her expenses back to Seymour; that when she returned to Seymour, he knew that she was going to return, but that she was doing so against his will; that while he was sick in Florida, his wife arranged to go to him, and that appellant had promised to furnish money with which to pay the expenses of appellee's wife and an attendant; that upon return of appellant to Seymour, when he called at the home of appellant to see his wife, appellant told him he could see her, if she (appellee's wife) would consent, and that she refused to see him. We think we have set out every material fact stated in

the verdict, and it is upon these facts that appellant grounds her motion for a *venire de novo*, and insists that it was error to overrule it.

It is first urged that the special verdict is ambiguous and uncertain, "because it consists of two separate and distinct findings of alleged facts." In other words, counsel contend, that because the trial court submitted to the jury, the two forms of verdict prepared by counsel, and that there are some conflicting statements therein, it is not sufficient to uphold a judgment in favor of appellee. Counsel say that the verdict is ambiguous and uncertain.

If it can be said that the two forms or sets of interrogatories, as prepared by counsel, and submitted to the jury, and their answers thereto, constitute a double verdict, then appellant's contention might be well founded; but we cannot so hold. Under the statute as amended by the acts of 1895, in regard to special verdicts, it is made the duty of counsel on either side to prepare such special verdict, and submit the same to the court. While the practice in such cases, seemed reasonably well defined by the statute, yet the first judicial construction put upon the amended statute, was by the Supreme Court in the case of *Bower* v. *Bower*, 146 Ind. 393, in which it was held that it was the duty of counsel on either side to prepare such special verdict, "meaning and intending that counsel on each side shall prepare such a number of interrogatories as may be necessary to cover all the facts material to the issues in the action, all of which interrogatories are to be submitted to the court, subject to its change, modification and final approval. When so approved, the court should cause them to be numbered, not in separate sets, but as an entirety, from one to the close, and submit them to the jury, with the instruction that each be answered and all returned as a special verdict

in the cause." In *Town of Kentland* v. *Hagan*, 17 Ind. App. 1, the same rule was announced.

We know however, that under the amended statute of 1895, it was almost the universal practice for counsel to prepare the interrogatories, for a special verdict, and to number them, not consecutively as a whole, but from one to the close, in each set, and in this form they were submitted to the jury; but it has never been held, and could not in our judgment, upon sound principle, be held, that the two sets of interrogatories and answers, constituted a double verdict. Trial courts, the Supreme, and this Court, have uniformly held them as constituting the whole, or single verdict, and we cannot depart from this established practice. If counsel for appellant had, at the proper time, in the court below, raised the question, and saved it by bill of exceptions, she might with some reason and justice urge it here; but appellant waived any right she might have had, by her failure to raise the question for which she now contends. Appellant's contention that the verdict is ill because it contains evidentiary matters, and legal conclusions, and not inferential and ultimate facts, is not well grounded. The jury in the case before us answered 128 interrogatories, and as was said in *Bower* v. *Bower, supra,* "many of these were wholly unnecessary, and could be of no useful purpose, and only serve to perplex and consume the time of the jury."

But when all surplus, redundant, and irrelevant interrogatories are eliminated from the verdict, there still remain abundant facts upon which the judgment may securely rest.

The true office of a special verdict, where the jury is required to return a verdict upon all issues, is to enable the jury, under the evidence, to find and state all

material facts.   In this case the substantial and material facts, as averred in the complaint, and found in the verdict, are brought within very narrow limits, and are in brief.   (1) That appellee and Sadie Hirshburg were husband and wife; (2) that they were living together, contentedly and happily; (3) that appellant was the mother of appellee's wife; (4) that appellant unlawfully, unjustly, wrongfully, and maliciously, alienated the affections of appellee's wife from him, and that she enticed, persuaded, and allured her to abandon him, and to live separate and apart from him; (5) that because of the foregoing wrongful and malicious conduct of the appellant, the appellee wholly lost and was deprived of the aid, comfort, services, fellowship, association, society, and assistance of his wife; (6) that by reason of the foregoing premises the appellee sustained damage.

All these facts, the jury found in favor of the appellee, and the findings thereon, are very clear, distinct and emphatic, and in no sense are they in the nature of evidentiary facts or conclusions of law.

Several reasons are assigned by appellant upon which she grounded her motion for a *venire de novo*, but, in view of all the facts, which we think were fully and clearly found in the special verdict, we do not think her motion was well taken.   The special verdict was not defective, either in form or substance.   It was a fair and full statement of every fact submitted to the jury.   There was nothing indefinite or uncertain about it as to the material and essential facts, but it was unusually plain and specific.   There was ample substance in it upon which the court could pronounce judgment.   It is no longer an open question in this jurisdiction that a *venire de novo* will not be awarded, unless the verdict, whether special or general, is so defective and uncertain upon its face that no judgment

can be rendered upon it. *Central Union Telephone Co.* v. *Fehring*, 146 Ind. 189; *Bower* v. *Bower, supra; Bartley* v. *Phillips*, 114 Ind. 189; *Board, etc.*, v. *Pearson*, 120 Ind. 426; *Wysong* v. *Nealis*, 13 Ind. App. 165.

Upon the material facts found, there is no substantial conflict, but on the contrary, the findings are amply sufficient upon which to ground a judgment. There was no error in overruling appellant's motion for a *venire de novo.*

Appellant's first and second assignments of error, bring in review, respectively, the action of the court in overruling her motion for a judgment on the special verdict, and in rendering judgment for appellee.

What we have said, pertaining to the appellant's motion for a *venire de novo*, applies with equal force to the questions raised by the first and second assignments of error. To entitle one, who has the burden of proof, to a judgment in his favor on a special verdict, it must appear, that the special verdict contains all facts essential to a recovery. If any essential fact necessary to support a judgment is not found, the party having the burden cannot prevail. Material facts, necessary to support a judgment cannot be supplied by intendment. If the special verdict fails to find any essential and material facts in favor of the party upon whom rests the burden, it is equivalent to finding such facts against him. A special verdict must find and state ultimate and inferential facts. It is not sufficient to state recitals of the evidence—mere evidentiary facts —or conclusions of law. These propositions are firmly established by the adjudicated cases in this State, and in support of which we cite the following: *Levi* v. *Allen*, 15 Ind. App. 38; *Sult* v. *Warren School Tp.*, 8 Ind. App. 655; *Shipps* v. *Atkinson*, 8 Ind. App. 505; *Austin* v. *McMains*, 14 Ind. App. 514; *Louisville, etc., R. W. Co.* v. *Quinn*, 14 Ind. App. 554; *Rarey* v. *Lee,*

16 Ind. App. 121; *Alexandria, etc., Co.* v. *Irish, Admr.,* 16 Ind. App. 534; *Fisher, Admr.,* v. *Louisville, etc., R. W. Co.,* 146 Ind. 558; *Bower* v. *Bower, supra; Boyer* v. *Robertson,* 144 Ind. 604. *Louisville, etc., R. W. Co.* v. *Miller,* 141 Ind. 533; *Mitchell* v. *Brawley,* 140 Ind. 216.

Applying these established principles to the special verdict before us, we are unable to see that it is subject to the objection urged against it by appellant.

It is conceded by appellee that some of the interrogatories and answers, state evidentiary facts only, and that there are some contradictory statements, but he insists that these may all be disregarded, and still the verdict is amply sufficient to support the judgment, and with this view of appellee we are in accord. We have examined the special verdict with great care and due consideration, and do not find anything in it for which the judgment should be disturbed. There are no contradictory statements upon any material facts, essential to appellee's recovery. The interrogatories and answers which appear in full in this opinion, together with the other facts stated in narrative form, fully state every material and essential fact necessary, and support every material averment in the complaint.

Verdicts, whether general or special, ought, in all cases to be upheld and sustained where it can be done by a fair, liberal and reasonable construction. The jury is a wholesome and recognized branch of the court in the administration of the law, and its labors and conclusions, should not be set aside and overthrown, except where manifest injustice has been done, and for clear and substantial reasons. Elliott's Gen. Practice, section 932; *Becknell* v. *Hosier,* 10 Ind. App. 5, 8; *Puterbaugh* v. *Puterbaugh,* 131 Ind. 288, 15 L. R. A. 341; *Branson* v. *Studabaker,* 133 Ind. 147,

163; *Equitable, etc., Co.* v. *Stout,* 135 Ind. 444, 451; *Sirk* v. *Marion Street R. W. Co.,* 11 Ind. App. 680.

Appellant's third specification in her assignment of errors, is that the court erred in overruling her motion for a new trial. The motion for a new trial contains thirty-five reasons. The first, second, and third reasons are, that, (a) the verdict is not sustained by sufficient evidence; (b) that the verdict is contrary to law, and (c) that the verdict is contrary to the law and the evidence. The evidence is not in the record, and under the rule in this State, no question is presented for review by the above causes assigned in the motion for a new trial.

In the case of *Ohio, etc., R. W. Co.* v. *Nickless,* 73 Ind. 382, the first and second reasons assigned for a new trial were, (1) the verdict was not sustained by sufficient evidence, and (2) the verdict was contrary to law. The evidence was not in the record, and the Supreme Court held that as the evidence was not in the record, the first and second reasons assigned for a new trial did not present any question for the court to determine. In *Marley* v. *Noblett,* 42 Ind. 85, the same rule was announced.

In the case before us, the evidence not being in the record, the first, second, and third reasons assigned for a new trial, do not present any question for our consideration. Causes four and nine to twenty-eight inclusive, assigned in the motion for a new trial, all relate to certain interrogatories and the answers thereto in the special verdict, in which it is stated that the interrogatories call for evidence and not for facts; or call for conclusions and the answers state conclusions. We quote the following, which will show the general tenor of all:

"Fourteen. Because question twenty-eight—first form of special verdict—calls for evidence, and not for any fact."

"Twenty.   Because question fifty-two and the an-
swer thereto—first form of special verdict—relates to
a conclusion only, and does not find any fact from
which such couclusion can reasonably be drawn."

These several reasons assigned for a new trial, do
not present any question.   They do not come within
any of the statutory provisions, for which a new trial
may be granted.   If appellant had any objection to the
form of any of the interrogatories, and they were not
proper to go to the jury, she should have made her ob-
jections to them before they were submitted to the
jury; and if the answers to the interrogatories were
improper, in that they stated conclusions, or other-
wise, she should have objected to the answers, and also
have objected to the discharge of the jury.   If she had
done this, and the court had ruled adversely to her,
and she had properly saved the questions so raised, by
bill of exceptions, the rulings of the trial court there-
on, might have been reviewed here; but she waived
her right to now be heard, by her failure to object at
the proper time.   Neither do causes five, six, seven,
and eight assigned as reasons for a new trial present
any question.   Cause five is on the ground that the
special verdict is so uncertain, ambiguous, etc., that
the verdict is double, uncertain, etc.   Causes seven and
eight are on the ground that the special verdict does
not show that appellee was blameless for the separa-
tion of his wife from him.

The questions here raised have no place in a motion
for a new trial, besides we have effectively disposed of
them, in passing upon the motion for a *venire de novo.*

Causes thirty-four and thirty-five are as follows:

"Thirty-four.   Because the jury fails to find any act
of malice on the part of defendant (appellant) toward
plaintiff (appellee).

"Thirty-five. Because the jury finds that the plaintiff's (appellee's) alleged wife left him with his knowledge and consent, and refused to live with him as a matter of her own choice and free will."

We will consider these two reasons in their order.

Appellee's complaint was drawn upon the theory that appellant maliciously caused his wife to abandon and live separate and apart from him, and that she maliciously alienated her affections from him. It is clear from the complaint that malice was a fact charged and relied upon, and it was necessary for appellee to prove malice, and that the jury should find that it was an element which actuated appellant in doing or saying what she did. In criminal actions, where malice is the *gravamen* of the crime, it must be established or proved as any other fact. Like intent, it may not be susceptible of direct and positive proof, but the court or jury may find that it existed, by reasonable and legitimate inferences from other proved and established facts, surroundings, and circumstances. So in the case in hand. Malice on the part of the appellant was a material fact, and it was necessary for the appellee to prove it, and also for the jury to find it as a fact.

When the verdict is taken and construed as a whole, we are unable to see upon what hypothesis appellant can say that the special verdict does not find that malice existed, on her part. We have already stated in detail, all the facts found, and quoted literally a number of interrogatories and answers wherein it is found, in the most plain and explicit manner, that appellant acted maliciously in causing the separation of appellee and his wife. On the other hand the verdict is wholly silent, as showing that she had any cause or reason for desiring such separation. So far as it appears, both from the record, and the verdict, appellee

was a man of good repute, high character, and in every, way worthy the woman he married. The verdict shows that he made all reasonable and necessary provision for her, while she was living with him as his wife, and fails to show any cause for the separation.

Reason thirty-five is not a cause for a new trial; but if it was, appellant's contention could not prevail. Instead of the verdict showing that appellee's wife left him of her own free will and accord, it clearly shows the contrary, and that she left him because she was maliciously and wrongfully persuaded to do so by appellant.

Marriage is the most sacred and holy relation known to Divine or human law. It is an institution ordained of God, sanctioned by all the nations of the earth, recognized the world over as the foundation of society and school of morals, and no one has a right to destroy and disrupt that relation, except for good and sufficient cause. It was early declared in the Mosaic law that a man should leave his father and mother, and cleave unto his wife, and that they should be one flesh. The Great Teacher said: "But from the beginning of the creation, God made them male and female. For this cause shall a man leave his father and mother and cleave to his wife; and they twain shall be one flesh. What, therefore, God hath joined together let no man put asunder."

It is a recognized law in this jurisdiction, and·in all the states of the Union, that a husband is entitled to his wife's society, as well as her services and against any one, who, by abducting her or inducing her to leave him, or keeping her separate and apart from him, deprives him of her society and services, he has a right of action. 9 Am. and Eng. Ency. of Law, 833.

It is clearly shown in the case before us, that the appellant did deprive appellee of the society and services

of his wife, and caused her to separate from him. For so doing she made herself liable to an action for damages, and every fact necessary to appellee's recovery having been found in his favor, and against appellant, and no prejudicial error appearing in the record, we cannot disturb the judgment.

We find attached to and accompanying appellant's reply brief, five affidavits, the substance of which is that, since this appeal has been pending, appellee's wife has returned to him, and that they are now living together. There is also filed with the record, an affidavit of appellee's wife, the substance of which is that her mother subjected her to cruel treatment, and told her that she would have to leave her home; that she wrote her husband, who was in Louisville, telling him how her mother treated her, and that she had told her that she must leave home, and that she intended to go to Hartford City, Indiana, and teach music; that thereupon appellee wrote to her to come to him; that she went, and has since lived with him.

Upon this showing appellant insists that the judgment should be "set aside, annulled and held for naught," and in support of her insistence cites and relies upon *Garner* v. *Garner*, 38 Ind. 139, and *Stephens* v. *Stephens*, 51 Ind. 542. Both of these appeals were from decrees of divorce. Pending the appeals, each of the appellants married, and it was held that after such marriage they could not insist upon a reversal. In the first case the court said: "It seems to be the law that a party cannot be relieved from a judgment of divorce after he has used the privileges of the judgment. Having availed himself of the benefits of the decree or judgment he must bear its burdens. This is, we presume, upon the principle of estoppel."

The cases cited are not in any sense analogous to the one at bar, and hence are not authority here.

But there is an additional and well grounded reason, why appellant's insistence cannot prevail. The affidavits to which we have referred, are no part of the record, and we cannot consider the question raised by them.

Judgment affirmed.