Argued March 25; affirmed September 9; rehearing denied
December 23, 1930

# *HOLLOPETER *v.* PALM

(291 P. 380, 294 P. 1056)

* On appeal to the United States Supreme Court.

*A. E. Reames* of Medford for appellant.
*Gus Newbury* of Medford for respondent.

BEAN, J. ■ The defendant demurred to plaintiff's complaint for the reason, it being an action for damages, that it was necessary for plaintiff to allege in the body of the complaint that he was damaged on account of the injuries alleged in detail therein. The *ad damnum* clause in the allegations of the complaint is entirely wanting. In the demand for judgment "the plaintiff prays the judgment of this court against the defendant in the full sum of $300 for said medical aid and said expenses so incurred by plaintiff, and for a judgment in the further sum of fifteen thousand dollars ($15,000) for said damages sustained by plaintiff."

In 1 Bates' New Pleading and Practice, p. 264, § 2, we find the following:

"An entire omission of the *ad damnum* clause will be deemed immaterial where, after the cause of action is set out, the prayer is for a specified amount: *Robinson v. Campbell,* 104 Kan. 509 (180 P. 193); *Jonas v. Hirschburg,* 18 Ind. App. 581 (48 N. E. 656); *International, etc., Ry. v. Culpepper,* 19 Tex. Civ. App. 182 (46 S. W. 922); *Riser v. Walton,* 78 Cal. 490 (21 P. 362); *Bank v. Port Townsend,* 16 Wash. 450 (47 P. 896). See also *Weaver v. Mississippi, etc., Boom Co.,* 28 Minn. 542 (11 N. W. 113), and *Bartlett v. Odd Fellows Sav. Bk.,* 79 Cal. 218 (21 P. 743, 12 Am. St. Rep. 139). But this will not excuse omission to show an injury: *L., N. & S. Ry. v. Wilkins,* 45 Kan. 674 (26 P. 16)."

We also notice in the answer of defendant the averment "That plaintiff has not been damaged in any sum whatsoever on account of any of the matters alleged in his amended complaint." The answer is denied by the

reply. Under these circumstances, we think the demurrer to the complaint was properly overruled and that especially after verdict the complaint should be held to be sufficient in this respect. The allegations of the complaint set forth a good cause of action.

The questions raised necessitate notice of the workmen's compensation law to some extent. We may omit reference to the amendments of the law in 1927 as the cause of action is alleged to have accrued in 1926. Or. L., § 6614, provides in part:

"All persons, firms and corporations engaged as employers in any of the hazardous occupations hereafter specified shall be subject to the provisions of this act; provided, however, that any such person, firm or corporation may be relieved of certain of the obligations hereby imposed, and shall lose the benefits hereby conferred by filing with the commission written notice of an election not to be subject thereto in any manner hereinafter specified;"

The language of this section in regard to filing a notice *"in any manner hereinafter specified"* indicates that there is more than one manner of relieving an employer of the provisions of the act.

Section 6615 provides in part as follows:

"All workmen in the employ of persons, firms or corporations who as employers are subject to this act shall also be subject thereto; provided, however, that any such workman may be relieved of the obligations hereby imposed and shall lose the benefits hereby conferred by giving to his employer written notice of an election not to be subject thereto in the manner hereinafter specified."

Section 6616, as amended by the General Laws of Oregon, 1925, chapter 133, is in part to the effect that every workman subject to this act, while employed by an employer subject to this act who while so employed

sustains personal injury by accident arising out of and in the course of his employment and resulting in his disability, or his beneficiaries in case the injury results in death, shall be entitled to receive from the industrial accident fund the sums thereinafter specified in lieu of all claims against his employer on account of such injury or death, except as thereinafter specially provided.

The act, after defining hazardous occupations and giving many other definitions, provides in section 6620 as follows:

"Any employer engaged in any of such hazardous occupations who would otherwise be subject to this act, may on or before June 15th next following the taking effect of this act, file with the commission a statement in writing declaring his election not to contribute to the industrial accident fund hereby created, and thereupon such employer shall be relieved from all obligations to contribute thereto, and such employer shall be entitled to none of the benefits of this act, and shall be liable for injuries to or death of his workmen, which shall be occasioned by his negligence, default or wrongful act as if this act had not been passed, and in any action brought against such an employer on account of an injury sustained after June 30th next following the taking effect of this act, it shall be no defense for such employer to show that such injury was caused in whole or in part by the negligence of a fellow-servant of the injured workman, that the negligence of the injured workman, other than his willful act, committed for the purpose of sustaining the injury, contributed to the accident, or that the injured workman had knowledge of the danger or assumed the risk which resulted in his injury.

"Any person, firm or corporation hereafter engaging as an employer in any of said hazardous occupations may file a like notice with said commission prior to or within three days of the time of becoming such employer and shall thereby and thereupon become

relieved from making contributions to said fund, and shall be liable to his workmen as in the case of existing employers so electing, and shall as in the case of such employers, lose all benefit of the defenses above described. All employers engaged in said hazardous occupations shall display in a conspicuous manner about their works and in a sufficient number of places reasonably to inform their workmen of the fact, printed notices furnished by the commission stating that they are or are not, as the case may be, contributors to the industrial accident fund. The refusal or neglect of an employer to display such notice as herein provided, shall be a misdemeanor, and upon conviction thereof the offending employer shall be punished by a fine of not less than $10 nor more than $100. * * *''

Section 6621 directs that all such employers, who shall not as therein provided give to the commission written notice of their election not to contribute to said fund, shall be subject to all the provisions of this act.

Section 6622 makes provision for an employer who has elected not to contribute under the act to recall such election and post the required notice announcing his election to become subject to the provisions of the act, and further provides as follows:

''No person, firm or corporation other than the persons, firms and corporations paying to the industrial accident commission the required payroll percentage prescribed by this act shall engage as an employer in any of the hazardous occupations enumerated in section 6617 unless and until such person, firm or corporation shall have filed with the industrial accident commission a statement in writing signed by such person, or by the duly authorized agent of such firm or corporation, stating the name and address of such person, firm or corporation and describing the hazardous occupation in which such person, firm or corporation is engaged or proposes to engage, * * *.''

and provides for notice of a change of an address and that it shall be a misdemeanor to engage in such haz-

ardous occupation unless or until such prescribed statement or statements shall have been filed. This section further provides thus:

"If any person, firm or corporation subject to this act shall engage in any hazardous occupation as defined by this act in violation of this section, such person, firm or corporation shall not be entitled to any of the benefits or to the protection of this act. If any employee of such person, firm or corporation shall receive an accidental injury in the course of his employment, such injured employee, or if death results from the injury, his widow, children or other dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such person, firm or corporation, such election to be made in advance of any action, and if he elects to take under this act he shall assign to the state industrial accident commission for the benefit of the accident fund his cause of action, if any, against such person, firm or corporation. * * *."

There is considerable controversy in regard to the application of section 6622. It is contended by defendant in the present case that it was incumbent on plaintiff, prior to instituting action, to elect whether he would take under the act or seek a remedy against defendant. The purpose of that part of section 6622, last quoted, is to prevent a person, firm or corporation which would automatically come within the provisions of the act, unless notice of rejection to the contrary was given, from failing to comply with the provisions of the act in giving notice that they intended to engage in a certain kind of hazardous occupation, and their address, so as to prevent such persons from engaging in a hazardous occupation without complying with the statute in this respect, and if no accident befell any of the employees the matter might never be called to the attention of the industrial accident commission and the percentage due the commission would never be paid.

■ Where a person complies with the provisions of the act by giving notice to the commission and posting the required notice informing his employees whether he is or is not under the provisions of the industrial accident law, the part of the section in regard to an election being made in advance of the action does not apply. This is plain from the provision that if the employer is under the protection of the act there would be no cause of action against him and there would be nothing to assign to the State Industrial Accident Commission for the benefit of the accident fund. Therefore, the important question in this case is, was the defendant under the protection of the industrial accident commission law?

■ The circumstances in regard to the construction of the building in which plaintiff was employed by defendant at the time of the accident are about as follows: Mr. Palm was the owner of a corner lot 75 by 140 feet in Medford upon which there were three or four old buildings. He had torn down the old structure and constructed a new building on the corner, and on April 6, 1926, he wrote to the industrial accident commission, directing the letter to the "State Compensation Dept." as follows:

"I expect to wreck a one-story brick building, located No. 11-13 & 15 North Fir Street, Medford, Ore., and rebuild same commencing work on same the 9th or 10th of April.

"This is to notify you that I do not wish to come under the State Compensation Act. Very truly yours, C. W. Palm."

Prior to the employment of plaintiff by defendant, the defendant posted in the building, where plaintiff was employed, a notice of rejection of the workmen's compensation law, which remained so posted in a conspicuous place until after the employment of plaintiff

and the occurrence of the accident. Plaintiff testified that the card was signed "C. W. Palm, by Earl H. Fehl"; also, that prior to the accident he had a conversation with Mr. Fehl, defendant's foreman on the work of construction, and asked Mr. Fehl what the card meant, and he was told "that Mr. Palm had rejected the workmen's compensation act." On account of the direction of the letter to the "State Compensation Dept." there was some delay in its receipt. On April 17, 1926, the State Industrial Accident Commission answered the letter of defendant in part as follows:

"We are in receipt of your letter of April 6th, notifying us that you expect to wreck a building and to erect another and that you do not wish to operate under the protection of the Workmen's Compensation Law.

"The law provides that an employer, who is operating or has operated under its protection, may file a rejection before May 1st of some year, and such rejection becomes effective on July 1st following. As you have previously operated under the law, your rejection could not become effective until July 1, 1926."

On the 21st of April, 1926, the defendant's foreman wrote the State Industrial Accident Commission as follows:

"I have been requested to answer the enclosed letter from your office which was addressed to Mr. C. W. Palm, in answering which I will state as follows:

"The undersigned has full charge of the work that you refer to in the enclosed letter and if you will turn to your files you will find that Earl H. Fehl is not under the workmen's compensation law of the state as same has been properly rejected sometime ago.

"Before I begun the construction of the building for Mr. Palm I requested from your office and received the necessary notices to be placed on the works, same was promptly erected and I supposed the incident was closed.

"Personally I am the builder and issue my own checks in payment for all bills, but the building when completed is to be owned by Mr. C. W. Palm, but I fail to see wherein we are liable to the state under the workmen's compensation law.

"Thanking you kindly for past friendly relations, I remain Yours truly, Earl H. Fehl."

Mr. Palm terms the whole construction, including the building in which the accident occurred, as one block. The building on the corner was completed 21 months before he engaged in wrecking another old building and constructing the building in which the accident occurred. His correspondence shows that he had settled with the industrial accident commission for the percentages due in constructing what we will term "the first building" and that that was a closed incident.

As we view it, when he commenced the last construction and gave notice to the commission that he did not wish to come under the provisions of the act, he came within the latter part of section 6620, providing for a person hereafter engaging as an employer in any of said hazardous occupations, and was entitled to file a notice with said commission prior to or within three days of the time of becoming such employer. On April 6, 1926, when defendant wrote the letter to the commission he was not an "existing employer" but a mere contemplated employer, and, notwithstanding the ruling of the commission, he had the right to reject the compensation act and did legally reject the same in so far as it affects the plaintiff. The commencement of the building about April 9, 1926, was "engaging as an employer" in a hazardous occupation. It had no legal connection with the construction which he had completed 21 months prior to that time. His notice of

rejection took effect when the same was posted, as shown by the testimony, and, in so far as Hollopeter was concerned, the defendant C. W. Palm was not within the protection of the industrial accident commission law. In other words, in order for a person engaged in a hazardous occupation to comply with the statute, it is incumbent upon him to give notice to the commission of his name and address and post printed notices furnished by the commission, stating that he is, or is not, a contributor to the industrial accident fund. It was not a compliance with the law, so as to bring the defendant within the protection of the act, for him to post a notice notifying his employees that he was not a contributor to the industrial accident fund and that he rejected the same. Defendant did not attempt to recall his election not to contribute under the act, as provided in section 6622, as amended in 1925, nor give his employees any notice that he was under the provisions of the act, nor any notice except the red rejection card mentioned. On November 30, 1926, Mr. Palm wrote the Industrial Accident Commission a letter in which he stated in part thus:

"I am not a contractor, or builder, occasionally I build a building for myself, but do not think that I will do any more building for some time to come, but in case I ever do, I will be pleased to advise, and will want the full protection of your office, and cooperation."

The trial court was therefore right in instructing the jury that the defendant did not come within the protection of and was not entitled to the benefits of the industrial accident law. This question is raised and the position of plaintiff is challenged by demurrer to the reply, by a motion for judgment on the pleadings, by a motion for nonsuit and a request for a directed verdict in favor of defendant.

According to our construction of the workmen's compensation law, particularly section 6622, as amended in 1925, the acts of defendant in giving notice of engaging as an employer in wrecking a building and rebuilding the same at a time when he was not "paying the industrial accident commission the required payroll percentage prescribed" and at a time when he had no payroll upon which to pay such percentage and had not had such payroll or paid such percentage for nearly two years, fixes the status of defendant at that time as embarking in a new undertaking as an employer in a hazardous occupation, and the notice which he gave the commission and the notice rejecting the workmen's compensation law which he caused to be posted on the works placed him in the class not contributing to the industrial accident fund and "not entitled to any of the benefits or to the protection of" the act. This renders it unnecessary to discuss several features of the case ably presented by counsel for defendant.

It is contended, however, by defendant, that the penalty for not giving notice, as required by the act, is a fine as for a misdemeanor and would not prevent defendant from obtaining the benefits and being entitled to the protection of the act. They cite *Elliott v. Standard Oil Co.*, 18 Fed. (2d) 292, where that eminent jurist, Judge Bean, held that:

"The posting of the notices by an employer engaged in a hazardous occupation is not necessary to advise a workman who enters his services while he is so engaged that his employer is subject to the act, for he is charged by law with knowledge thereof by reason of his employer's occupation."

■ Since the accident involved in the case last mentioned occurred, section 6622, as amended by General

Laws of Oregon, 1925, has gone into effect. It was not in effect at the time of the accident referred to in the opinion of Judge Bean. That section now provides, as we understand it, a double penalty: a fine, and also that if one engages in a hazardous occupation, as defined by the act, in violation of section 6622 "such person, firm or corporation shall not be entitled to any of the benefits or to the protection of this act." This amendment was not considered or discussed by Judge Bean in the case referred to. No doubt, as far as the Industrial Accident Commission dealing with the defendant is concerned, they would be bound by the ruling which they made, but as to the plaintiff, he was entitled to be informed, as provided by the statute, whether the defendant was under the workmen's compensation act.

The commission was not responsible for the defendant's posting the red rejection card in an effort to render himself not liable for contribution to the industrial accident fund. In *State ex rel. v. Roesch,* 108 Or. 368, 374 (216 P. 749), Roesch was engaged in the operation of bottling works, and a regular contributor to the industrial accident fund. On May 23, 1919, Roesch took over the work of constructing a garage building which had been abandoned by a contractor. On that date Roesch gave written notice to the commission that he was going to complete the building and that in the construction of the garage he elected not to contribute to the accident fund and requested the necessary rejection cards which were forwarded to him by the commission and posted. The commission contended that under Or. L., § 6621, the rejection as to the occupation of construction of the garage could not become effective until July 1, 1919. It was held that "This statute has no application to a case where such employer engages in an entirely new and different occupation, and, within

the time provided, gives notice that as to the latter occupation, he elects not to contribute." The case is somewhat analogous to the present case.

■ The defendant assigns error of the court in permitting plaintiff, over the objection of defendant, to introduce testimony to the effect that, except for posting the rejection card, plaintiff would have filed his claim with the commission, and other evidence tending to support the estoppel pleaded in the reply. The court, after overruling defendant's motion for a directed verdict, instructed the jury to disregard all the evidence concerning the matters of estoppel. After the court determined as a matter of law that the defendant was not under the workmen's compensation law, we think it was proper for the court to withdraw from the jury the testimony referring to the matter of estoppel. The evidence was admitted in good faith and we see no necessity for the trial court to try the case over on account of the change of view the court took as to the law. We see no material departure from the cause of action alleged in the complaint. We think there was no reversible error in connection with the ruling. As to the testimony in regard to the "red card" we think it was competent for witnesses other than the plaintiff to testify that they saw such card posted in the building and also in regard to the statement of Earl H. Fehl, defendant's foreman, to the effect that the red card meant that Mr. Palm was not under the workmen's compensation law, as the testimony of Fehl tended to show that the card was not one of defendant's.

■ Error is predicated upon the refusal of the court to instruct the jury upon the request of the defendant as follows:

"3. If the employment of the plaintiff did not require him to be upon the scaffold from which he fell, then he could not recover herein.

"4. If, in going upon the scaffold in question, the plaintiff was a mere volunteer, he can not recover.

"5. If the plaintiff, as a carpenter, knew or ought to have known that the scaffold in question was not sufficient to stand the strain which was being put upon it at the time of the accident, and such strain being one of the causes of the accident, then the plaintiff can not recover.

"6. The plaintiff can not recover if his negligence or want of care contributed in any degree to the accident."

The testimony of plaintiff indicated that the defendant himself directed him to go upon the scaffold, and the request No. 3 was not appropriate. The same can be said of request No. 4, and it might be observed that, in the employment of a carpenter by another person in the construction of a building, it would not be inferred that the line of duty would be confined to any particular place or kind of work.

The fifth request calls in question the intent of the employers' liability act. Or. L., § 6785, requires that all scaffolding, staging, false work, or other temporary structure, shall be constructed to bear four times the maximum weight to be sustained by said structure and such structure shall not at any time be overloaded or overcrowded. The testimony indicated that the staging was not in compliance with the requirements of the law and that it was overloaded and thereby caused the accident. It is well-settled that such requirement of the employers' liability act is a nondelegable duty imposed upon the employer and the responsibility can not be changed from the employer to the employee, whatever his knowledge or opinion might be. We need not pause to cite authorities upon this point. Request No. 5 was not in conformity with the employers' liability act.

Request No. 6, that the plaintiff can not recover if his negligence or want of care contributed in any degree to the accident, is answered by Or. L., § 6790, which provides that the contributory negligence of the person injured shall not be a defense but may be taken into account by the jury in fixing the amount of damages. There was no error in refusing to give the requested instructions mentioned.

11. Error is predicated upon the refusal of the court to instruct the jury as requested by defendant as follows:

"10. If you believe from the evidence that the plaintiff has suffered injury since the happening of the accident alleged in the amended complaint, but you can not say from the evidence that the accident was the proximate cause of this condition, but that other things may have been the proximate cause thereof, you must find for the defendant.

"11. If you believe from a preponderance of the evidence that the condition which the plaintiff alleges he is now suffering from may have been caused by some impurity in has blood, whether he were responsible for that or not, you can not find for the plaintiff."

The court, in its charge to the jury, fully covered this phase of the case by the following language:

"The plaintiff can not recover under any circumstances for the result of an injury that he has not proved by a preponderance of the evidence resulted from the accident.   *   *   *

"If you believe from the evidence that things other than the accident could have caused the condition from which the plaintiff now claims to be suffering, and you can not say by a preponderance of the evidence that that condition results from the accident, then you must find for the defendant."

■ The defendant requested several instructions which had for their foundation the assumption that the

defendant was under the workmen's compensation act. For the reason which we have noticed the refusal to so charge the jury was proper. The defendant was not entitled to have the jury instructed in any manner so as to imply that it was the duty of plaintiff, when he saw the red rejection card and did not see any card of defendant's posted in the building stating that he was contributing to the industrial accident fund or had accepted the benefits of the act, and plaintiff was also informed by defendant's foreman that defendant was not under the workmen's compensation act, to make further investigation or inquiry of the industrial accident commission in regard thereto. The statute provides for the information in such case and who shall furnish it.

The court charged the jury that the negligence of the plaintiff, unless wilful, was no defense; that the negligence of a fellow-workman of plaintiff on the building was not a defense; neither was assumption of risk available as a defense for defendant. These instructions were in accordance with the statute. See Or. L., §§ 6789, 6790.

After a careful examination of the charge to the jury by the court, we find no reversible error therein. It follows that the judgment of the circuit court must be affirmed. It is so ordered.

COSHOW, C. J., BROWN and ROSSMAN, JJ., concur.

Petition for rehearing denied December 23, 1930

## ON PETITION FOR REHEARING
### (294 P. 1056)

BEAN, J. An extensive and able brief in support of a petition for rehearing has been filed in this case, and we have carefully examined the same and reviewed our former opinion. We are unable to reach any different conclusion than heretofore indicated.

We think, however, that a correction should be made and that the opinion will be better understood by eliminating the following paragraph in our former opinion, which is hereby expunged:

"The language of this section in regard to filing a notice 'in any manner hereinafter specified' indicates that there is more than one manner of relieving an employer of the provisions of the act."

The petition for rehearing is denied.

COSHOW, C. J., BROWN and ROSSMAN, JJ., concur.