EARL PARK STATE BANK ET AL. *v.* LOWMON.

[No. 12,942.   Filed March 27, 1928.   Rehearing denied June 19, 1928.
Transfer denied December 17, 1930.]

*Thomas F. Gaylord, Addison K. Sills* and *Charles M. Snyder,* for appellants.

*Fraser & Isham,* for appellee.

McMahan, J.—Action by appellee, Walter G. Lowmon, against appellants Earl Park State Bank and James E. Childress, and James R. Barr, Minnie Barr and Samuel Gaunt, the last three named being partners in the grain business and trading under the name of "the Richland Grain Company."

The first paragraph of complaint was for money had and received. The second, third and fourth paragraphs, after alleging that appellant bank had been engaged in the banking business, and that appellant Childress had for many years been cashier and the active manager of its business, and that the other three defendants were engaged in the grain business as partners under the name of "the Richland Grain Company," alleged, in substance: That appellee, who was a farmer with no business experience, had been acquainted with Childress for many years, and had great confidence in his judgment; that, on August 8, 1923, appellee had on deposit in the bank, subject to check, more than $6,000; that the grain company was then, and, for a long time, had been indebted to the bank more than $10,000, which appellants were desirous of having reduced; that Childress, knowing the state of appellee's account with the bank and, for the purpose of using appellee's money for that purpose, and to induce appellee to loan through the bank the said $6,000, falsely represented to appellee that the grain company was solvent and able to pay all of its debts and that a loan to it would be safe; that appellants fraudulently concealed from appellee the fact that the grain company was largely indebted to the bank, and that, if appellee made the loan, the money would be used to reduce the debt of the grain company to the bank; that, in order to induce appellee to make such loan, Childress represented that the bank stood behind it and guaranteed all loans of its depositors made through the bank and that the bank and Childress would guarantee appellee from loss, but that Childress fraudulently failed to execute a written guaranty: that the grain company and the members of the partnership were and for a long time had been insolvent; that appellee, not knowing of such insolvency, but believing them to be solvent and relying upon such representations of Childress, consented that Childress

should have $6,000 of said deposit to make a loan to the grain company; that, pursuant to such consent, Childress debited appellee's account $6,000, took that sum and credited the same to the indebtedness of the grain company to the bank, taking a note purporting to be payable to appellee and which note was retained by appellants and was never in the possession of appellee; and that appellants had, after demand, refused to honor a check drawn by appellee for said money and had refused to pay the same to appellee. The third and fourth paragraphs are very similar to the second, about the only difference being that they more fully allege facts relating to the insolvency of the grain company, its indebtedness to the bank, and the purpose appellants had in inducing appellee to allow it to use his money, and his reliance upon the honesty of Childress in inducing him (appellee) to consent to the bank's use of his money.

Appellants filed an answer of denial, and a second paragraph alleging, in substance, that appellee requested appellants to loan the $6,000 to the grain company, and that, pursuant to this request, they made the loan, taking a note payable to appellee; that the note was delivered to appellee, after which the grain company paid the accruing interest thereon to appellee, who accepted the same.

A trial by jury resulted in a verdict of $3,285.94 in favor of appellee. Two sets of interrogatories, one evidently prepared by appellants and one by appellee, were submitted to and answered by the jury. The facts specially found by the jury, in answer to one set of interrogatories, are, in substance, as follows: Neither the bank nor Childress, on or prior to August 8, 1923, knew the grain company was insolvent, but they both believed it was solvent; that, on August 7, 1923, the grain company had on deposit with the bank, subject to check, $3,293.60, and, on the next day, it had on deposit

subject to check more than $5,000; on both of said two days, the grain company owed the bank a note for $3,000, which was then due, but there were no other matured obligations of the grain company to the bank on said days; after the $6,000 note to appellee was signed, one of the members of the grain company directed the application by the bank of the proceeds of that loan on the indebtedness of the company to the bank; prior to the signing of the $6,000 note by the grain company, there was no understanding between appellants and the grain company as to what should be done with the proceeds of the $6,000 loan; nothing was said about the application of such proceeds until after the $6,000 note was executed; after the $6,000 note was executed by the grain company, Childress returned to the bank and, after banking hours, canceled as paid the notes of the grain company held by the bank, and later in the day delivered them to the grain company at its offices, and the grain company at that time executed a new note to the bank for $1,200; appellee, prior to August 7, 1923, verbally consented that appellants might loan $6,000 of his money in his checking account to the grain company for six months at seven per cent interest, and in September, 1923, he learned that such loan had been made for him and that his account had been debited $6,000; in the fall or winter of 1923, he learned the grain company had executed a note to him for $6,000, and in March, 1924, he received $245 interest on the $6,000 note of the grain company, said $245 being paid by the grain company; on and before August 7, 1923, appellee had been a customer of the grain company and believed it was solvent; the company, prior to that day, had been indebted to appellee, and its reputation for solvency at that time was good, of which repute appellee had knowledge. In making the $6,000 loan, appellee relied on the representation made by Childress or some one acting for the bank.

In answering the other set of interrogatories, the jury found the following facts: On August 7, 1923, appellee had on deposit with appellant bank subject to check, over $6,000; on and prior to that time, appellant Childress was the officer in active charge and management of such bank and the other three named defendants were partners trading under the name of "the Richland Grain Company," and were indebted to the bank by two notes aggregating $8,000, one of which notes was then past due and unpaid, while the other one was not yet due; the grain company was then and ever since has been insolvent and, in April, 1924, made an assignment for the benefit of its creditors; appellants did not give appellee any information that the grain company was indebted to the bank before the money was taken out of appellee's account, and appellee did not have any knowledge of that fact; before commencing this action, appellee drew his check for $6,000, and payment of same was demanded of the bank during banking hours; about August 6, 1923, appellee, when in the bank, informed Childress that the bank could loan his $6,000 on its own responsibility for six months and that he would not check against any part of the $6,000 for six months; appellee, at or before the bank placed to his credit $245, did not know that his money had been applied by Childress on the notes of the grain company to the bank, nor did he at that time know the grain company was insolvent; when Childress and the bank debited appellee's account $6,000, they applied that sum directly on the debts of the grain company to the bank; the $6,000, with interest at six per cent to date of the verdict, amounts to $6,843; the $245, with six per cent interest thereon from the time it was credited to appellee's account to date of the verdict, amounts to $271.12, and when the $271.12 is deducted from the amount of the $6,000 on deposit, plus interest, the balance is $6,571.88; Childress, acting for the bank,

stated to appellee that the grain company was good and had $100,000 worth of property in the clear; appellants did not conceal from appellee that, in case his money was loaned to the grain company, it would be applied by appellants on the notes of the grain company to the bank; the two appellants and the other three defendants in what they said and did were not all acting together to obtain appellee's money to pay $6,000 of the debts of the grain company to the bank out of the money of appellee then on deposit with the bank.

Appellants' motions for a new trial and for judgment on the interrogatories and answers thereto were overruled, after which a judgment for $6,571.88 was rendered for appellee; hence this appeal.

Instruction No. 1, given at the request of appellee, related to the issue presented by the first paragraph of the complaint. It told the jury, in effect, that, if it found that Childress recommended that appellee make a loan of $6,000 to the grain company, and that appellee declined so to do, but informed appellants that the bank could make a loan of his money to the grain company for a period of six months after August 7, 1923, on its own responsibility, appellee would forego the use of the money and not draw checks against it for six months, and if it further found that the bank, or Childress acting for it, on said day debited appellee's account in the sum of $6,000, and loaned that sum to the grain company, and if, at the expiration of six months thereafter, appellee drew his check on the bank and demanded payment from the bank, the jury should return a verdict for appellee for the $6,000, plus interest, and less any amount which had been paid thereon. Appellants contend the court erred in giving this instruction, for the reason that it is mandatory in form and ignored the affirmative defense set up in the second paragraph of answer and the evidence introduced rela-

tive to that defense. Appellants say this instruction did not require the jury to find any fact that would operate as a bar to or have prevented the full force and effect of their defense. The authorities cited by appellants in support of this contention are cases where the court discussed the effect of a mandatory instruction where a necessary element to warrant a recovery had been omitted from the instruction. One of the cases cited by appellants is *Indianapolis Traction, etc., Co.* v. *Mathews* (1912), 177 Ind. 88, 97 N. E. 320. The others are of like character. Appellants make no claim that any fact necessary to a recovery was omitted from this instruction.

The same objection is made to instruction No. 2 and the same authorities cited. What we said in relation to instruction No. 1 applies to instruction No. 2.

In instruction No. 4, the court set out the material allegations of the second, third and fourth paragraphs of the complaint, and told the jury that if it found such facts proved by a preponderance of the evidence and that appellants fraudulently took appellee's money to pay the debt of the grain company to the bank as alleged, the jury's verdict should be for appellee without any reference as to whether or not appellant took a note of the grain company. The objection made to this instruction is that all facts therein enumerated might have been proved and that the jury might also have found that the note was taken in appellee's name at his direction, and was accepted by him, and the transaction completely confirmed and ratified by him as alleged in the second paragraph of answer. This contention of appellants cannot prevail. The sufficiency of the answer was not tested by demurrer, and was clearly not sufficient as an answer of ratification, in that there is no allegation that appellee, at the time it is alleged the

note was delivered to him and when the interest thereon was paid to and accepted by him, had any knowledge of the fraud that had been practiced on him as alleged in the complaint. We need cite no authorities in support of the proposition that knowledge is an essential element of ratification. There is no claim that there is any evidence tending to supply the element of knowledge, and, without that, appellee would have been entitled to a recovery, though all of the allegations of the answer had been proved.

Instruction No. 5, concisely stated, is: That appellee had introduced evidence which he claims shows appellants applied to and requested him to make a loan of the $6,000; that appellee declined so to do at his risk, but told appellants if they wanted to loan it to the grain company at their risk, he would forego the use of his money for six months; that Childress, acting for the bank, took the money out of appellee's account and applied it to the debt of the grain company to the bank, and when appellee, six months thereafter, demanded his money from appellants, payment was refused. The jury was then told that if such facts were proved by a preponderance of the evidence, appellee was entitled to a verdict. The court also told the jury that appellants claimed appellee applied to them to find him a borrower for his $6,000, and that they named certain prospective borrowers, among whom was the grain company, and that appellee selected that company and requested appellants to loan it his money, and that the loan was made at his request, a note being taken payable to appellee and signed by the grain company. As bearing on this theory of appellants, the court further instructed the jury, in substance, that, if the claim of appellants as outlined was established by the evidence, if the jury also found appellant bank was the banker of appellee and Childress was its cashier, and that appellee

consulted the cashier as to making loans, had confidence in him, and relied upon him to give him honest and disinterested advice looking to his best interest, it was the duty of appellants to act in good faith and to give him disinterested and honest advice; that if they did not act in good faith in giving him advice, but concealed the fact that the grain company was largely in debt to the bank, and that, in recommending and negotiating the loan to the bank, they acted in bad faith in suppressing the truth in the interest of the bank so far as to procure such money to pay the debt of the grain company to the bank, taking appellee's money when the grain company was insolvent, appellee would be entitled to recover for any loss sustained. The facts as enumerated in this instruction, if proved, were sufficient to warrant a recovery, though all the facts alleged in the answer had been proved. There are, as before stated, no facts proved sufficient to establish ratification. There is no claim that the defense set up in the second paragraph of answer is sufficient upon any theory other than ratification, and it is not good as an answer of ratification. There was no error in the giving of any of the above instructions.

Appellants insist that, since the jury found specifically: (1) That defendants did not conceal the fact that in case plaintiff's money was loaned to the grain company, it would be applied on the notes of that company to the bank; (2) that there was no conspiracy between them and the grain company; (3) that there was no prior understanding between them and the grain company as to what should be done with the $6,000; and (4) the consent of appellee to the loan, the making of the notes payable to appellee, his knowledge of the loan, and the debiting of his account in September, 1923, and his knowledge that the note had been made to him with his receipt of $245 interest, the court erred in

overruling their motion for judgment on the answers to the interrogatories. It is not necessary to again repeat the allegations of the complaint as to the fiduciary relationship existing between appellants and appellee, the alleged representations and concealments made to induce appellee to loan his money, the conditions under which appellee informed appellants they could loan the money on their own responsibility and that he would forego the use of the same for six months, and the allegation that he was induced to make the loan by reason of the fraud of appellants. The facts found can all be true and enough facts remain to sustain the general verdict for appellee. The facts found do not, as a matter of law, show a ratification of the fraudulent acts as found by the general verdict. It is not necessary that there should have been a conspiracy between appellants and the grain company. The court did not err in overruling appellant's motion for judgment.

Did the court err in rendering judgment in favor of appellee for $6,571.88? Appellants call attention to §615 Burns 1926, being §440 of the Civil Code, which provides: "When a trial by jury has been had, and a general verdict rendered, the judgment must be in conformity to the verdict." And §616 Burns 1926, §441 of the Code, provides that "where there has been a special finding on particular questions of fact, the court shall render the proper judgment." Acts 1897 p. 128, §598 Burns 1926, is as follows: "In all actions hereafter tried by a jury, the jury shall render a general verdict, but in all cases when requested by either party, the court shall instruct them when they render a general verdict to find specially upon particular questions of fact to be stated to them in writing in the form of interrogatories on any or all the issues in the cause, and this shall be the only form of verdict submitted to or rendered by the jury in the cause: Provided, The provisions in this section

shall not apply to cases in equity. These interrogatories are to be recorded with the verdict."

Appellants cite *Mitchell* v. *Geisendorff* (1873), 44 Ind. 358, in support of their contention that the court had no authority to render a judgment in excess of the amount designated in the general verdict and that the court erred in rendering judgment for $6,571.88. The jury in the case referred to returned a special verdict. Under the law then in force, it was necessary for such verdict to cover and find upon all the issues necessary to a recovery. A failure to find a fact in issue was equivalent to a finding against the party having the burden of proving such fact. *Fisher, Admr.*, v. *Louisville, etc., R. Co.* (1897), 146 Ind. 558, 45 N. E. 689. If a general verdict was returned with a special verdict, the general verdict was disregarded. *Louisville, etc., R. Co.* v. *Balch* (1886), 105 Ind. 93, 4 N. E. 288. In determining what judgment should be rendered, the court could look only to the pleadings and the special verdict. It is quite clear that §598, *supra*, was intended to and does abolish special verdicts as defined by the Code, although the statute defining a special verdict has not been expressly repealed. Watson's Works' Practice §1858. A general verdict must now be returned in all cases tried by a jury, and which are properly triable by a jury. No other form of verdict is now authorized, although, when a general verdict is returned, the jury may, in the language of the statute, find specially upon particular questions of fact to be stated to them in writing in the form of interrogatories. All verdicts must now be regarded as general verdicts. *Kelley* v. *Bell* (1909), 172 Ind. 590, 88 N. E. 58.

Section 616, *supra*, provides that where there is a special finding on particular questions of fact, the court shall render the *proper* judgment. In order to determine what a proper judgment is, the

court looks to the pleadings, the verdict and the answers of the jury to the interrogatories. Looking to the pleadings and the general verdict, we find that the jury found all the facts necessary for a judgment in favor of appellee. There is an inconsistency and irreconcilable conflict between the verdict and the answers to the interrogatories as to the amount which appellee is entitled to recover. The jury in answer to the interrogatories found facts from which it is clear that the amount of recovery should be $6,571.88, if there is to be a recovery. By the general verdict, the jury has said appellee should recover a judgment against appellants. Through what we must, in face of the special findings, say is a mistake or error, the amount of the recovery is fixed at $3,285.94, while, in answer to specific questions, the jury says the amount is $6,571.88. The court, by looking at the pleadings, the verdict and the answers to the interrogatories, can see that the *proper* judgment to render is the amount last stated. The court did not err in rendering judgment for $6,571.88. See *Adsit* v. *Schaff Bros. Co.* (1922), 78 Ind. App. 511, 135 N. E. 185, and authorities there cited.

There is no merit in the contention that the general verdict is not sustained by sufficient evidence. The evidence is ample to show that the grain company had made no application to appellants or to appellee for a loan, and that the negotiations in relation thereto originated with and were carried on by appellants without the knowledge of the grain company, in order that the bank might be relieved from the debt of the grain company—an obligation which the state banking department had for some time been insisting should be reduced.

The court should not have submitted two sets of interrogatories to the jury. The court should have caused

the interrogatories to be numbered, not in sets, but as an entirety, from one to the close before submitting them to the jury. *Jones* v. *Hirshburg* (1897), 18 Ind. App. 581, 592, 48 N. E. 656.

Judgment affirmed.

Dausman, J., absent.