644 So.2d 515 (1994)
CAPITAL BANK, a Florida Banking Corporation, Appellant,
v.
MVB, INC., a Florida corporation, Appellee,
JASMA CORPORATION, a Florida corporation, f/k/a Comare Corporation; MVB, Inc., f/k/a Curls & Conditioners, Inc.; and Anthony Battaglia, Cross-Appellants,
v.
CAPITAL BANK, a Florida banking corporation, Cross-Appellee.
Nos. 93-0408, 93-0427, 93-0428 and 93-1249.
District Court of Appeal of Florida, Third District.
September 7, 1994.
Rehearing Denied November 23, 1994.
*517 Ullman & Ullman, and Michael W. Ullman, North Miami Beach, Cooper & Wolfe, and Sharon L. Wolfe, and Maureen E. Lefebvre, Miami, for appellant/cross-appellee.
Gilbride, Heller & Brown, and James F. Gilbride, and Dyanne E. Feinberg, Miami, for appellee/cross-appellants.
*518 Before HUBBART, GERSTEN and GODERICH, JJ.
GERSTEN, Judge.
Appellant, Capital Bank (bank), appeals a judgment awarding appellee, MVB, Inc. (MVB), compensatory and punitive damages based on claims of fraud and breach of fiduciary duty. Cross-appellants, Anthony Battaglia, MVB and Comare (hereinafter collectively referred to as "Battaglia"), cross-appeal the denial of their motion to conform the verdict to the jury's intent. MVB and Battaglia, individually, also cross-appeal the adverse judgment on a promissory note and guaranty. We affirm in part, and reverse in part.
This case involves the issue of whether a bank owed and breached a fiduciary duty to its customer. Briefly stated, the facts are as follows.
Anthony Battaglia, his company, Comare, and its subsidiary, MVB, were customers of Capital Bank. Comare was a vendor of hair care products. Tellason Products, Inc. (Tellason), a manufacturer of hair care products, also had a loan relationship with the bank.
Battaglia's loan officer at the bank was James Assalone (Assalone). Assalone engineered MVB's purchase of Tellason's assets when Tellason verged on bankruptcy. The manufacturing equipment MVB purchased from Tellason was defective and continuously broke down. Therefore, products were not produced timely, sales were reduced, and Battaglia's business declined. Consequently, Battaglia sold his companies.
MVB sued the bank for fraud and breach of fiduciary duty. MVB asserted that the bank sought to gain its trust and then induced it to purchase Tellason's worthless assets, so that the bank would not bear the loss of Tellason's non-performing loan.
Comare and Battaglia, individually, also sued the bank for fraud. The bank counterclaimed for the amount of the note and the guaranty executed in connection with the Tellason purchase. The jury found in favor of MVB, Comare and Battaglia on all claims.
The trial court entered judgment for MVB, awarding compensatory and punitive damages in accordance with the jury verdict on the fraud and breach of fiduciary duty claims. The court also entered a judgment notwithstanding the verdict against Comare and Battaglia, individually, on their fraud claims. Neither Comare nor Battaglia have appealed that ruling.
In addition, the trial court entered a judgment notwithstanding the verdict against MVB on the promissory note, and against Battaglia, individually, on the guaranty. Finally, the court denied Battaglia's motion to conform the verdict to the jury's intent.

I
We first conclude that the record supports the jury verdict that the bank owed and breached its fiduciary duty to Battaglia. Fiduciary relationships are either expressly or impliedly created. Those expressly created are either by contract, such as principal/agent or attorney/client, or through legal proceedings, such as trustee/beneficiary and guardian/ward. Denison State Bank v. Madeira, 230 Kan. 684, 640 P.2d 1235 (1982).
Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties. Id. Courts have found a fiduciary relation implied in law when "confidence is reposed by one party and a trust accepted by the other." Dale v. Jennings, 90 Fla. 234, 244, 107 So. 175, 179 (1925). Accord Harkness v. Fraser, 12 Fla. 336 (1868); Harrell v. Branson, 344 So.2d 604, 607 (Fla. 1st DCA), cert. denied, 353 So.2d 675 (Fla. 1977).
Generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities. Lanz v. Resolution Trust Corp., 764 F. Supp. 176 (S.D.Fla. 1991); Barnett Bank of West Florida v. Hooper, 498 So.2d 923 (Fla. 1986); Watkins v. NCNB Nat'l Bank of Florida, N.A., 622 So.2d 1063 (Fla. 3d DCA 1993), review denied, 634 So.2d 629 (Fla. 1994).
However, fiduciary relationships between lenders and customers have been found to *519 exist in Florida, as well as in other jurisdictions. Hooper, 498 So.2d at 923; Atlantic Nat'l Bank of Florida v. Vest, 480 So.2d 1328 (Fla. 2d DCA 1985), review denied, 491 So.2d 281 (Fla. 1986), and review denied, 508 So.2d 16 (Fla. 1987). E.g., Brasher v. First Nat'l Bank, 232 Ala. 340, 168 So. 42 (1936); Stewart v. Phoenix Nat'l Bank, 49 Ariz. 34, 64 P.2d 101 (1937); Barrett v. Bank of America, N.T. and S.A., 183 Cal. App.3d 1362, 229 Cal. Rptr. 16 (1986); Credit Managers Ass'n of S. California v. Superior Court for Los Angeles County, 51 Cal. App.3d 352, 124 Cal. Rptr. 242 (1975); Earl Park State Bank v. Lowmon, 92 Ind. App. 25, 161 N.E. 675 (1928); First Nat'l Bank in Lenox v. Brown, 181 N.W.2d 178 (Iowa 1970); Broomfield v. Kosow, 349 Mass. 749, 212 N.E.2d 556 (1965); Pigg v. Robertson, 549 S.W.2d 597 (Mo. Ct. App. 1977); Deist v. Wachholz, 208 Mont. 207, 678 P.2d 188 (1984); Walters v. First Nat'l Bank of Newark, 69 Ohio St.2d 677, 433 N.E.2d 608 (1982); Bank of Commerce & Trust Co. v. Dye, 1 Tenn. App. 486 (1926); Hutson v. Wenatchee Fed. Sav. & Loan Ass'n, 22 Wash. App. 91, 588 P.2d 1192 (1978), review denied, 92 Wash.2d 1002 (1979). See Existence of Fiduciary Relationship Between Bank and Depositor or Customer so as to Impose Special Duty of Disclosure Upon Bank, 70 A.L.R.3d 1344 (1976 & Supp. 1989).
In Barnett Bank of West Florida v. Hooper, 498 So.2d at 923, the Florida Supreme Court found that a fiduciary relationship arose between a lender and a customer from the parties' established relationship of trust and confidence. Hooper cites to two cases which elaborate criteria for determining the existence of a fiduciary relationship: Klein v. First Edina Nat'l Bank, 293 Minn. 418, 196 N.W.2d 619 (1972) and Tokarz v. Frontier Fed. Sav. & Loan Ass'n, 33 Wash. App. 456, 656 P.2d 1089 (1982).
Klein declared that a fiduciary relationship arises where "the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him." 196 N.W.2d at 623. Tokarz held that "special circumstances" may impose a fiduciary duty on a bank, including where the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control. 656 P.2d at 1094.
Here, the bank initially provided a $100,000 loan and a $300,000 secured line of credit to Battaglia. Then, loan officer Assalone pressured Battaglia to enter into a series of transactions. Assalone first urged Battaglia to enter into a factoring relationship. Battaglia objected, but Assalone urged Battaglia to trust him and promised that Battaglia would benefit. Battaglia then relented, explaining "If you think it's good for us[,] I will try it."
Assalone next pressed Battaglia to place orders with Tellason. Battaglia again protested, but Assalone coaxed, "Do it for us ... You are part of [the] Capital Bank family. You help the bank, we are going to help you."
Thereafter, when Tellason faced bankruptcy, Assalone sought to convince Battaglia to purchase Tellason's assets. Battaglia remonstrated that he lacked knowledge of manufacturing or Tellason's manufacturing equipment. Assalone promised the bank would finance the purchase and operations of Battaglia's expanded business. "If you help us with this one, we will continue on. We are in business together," Assalone declared.
At this time, Assalone knew that Battaglia's business was weak financially, heavily indebted and with little capital. Assalone also knew that Tellason's manufacturing equipment frequently malfunctioned.
To convince Battaglia to purchase Tellason's equipment, Assalone showed him an appraisal he commissioned which listed the equipment's fair market value at $285,000 and the liquidation value at $205,000. Battaglia relied upon this appraisal and agreed to MVB's purchase of Tellason's assets.
However, Assalone failed to disclose that the appraisal was a "walk-thru" appraisal, not a specific appraisal. A walk-thru, or ballpark, appraisal is useless, testified the appraiser at trial. It is not accurate, as is a specific appraisal, which separately describes, lists and assigns specific values to each machine.
*520 Based upon these facts, we find that a fiduciary relationship existed between the bank and Battaglia. First, Assalone expressly invited Battaglia's reliance by urging Battaglia to trust him and by reassuring Battaglia that he was part of the Capital Bank family. See Stewart, 64 P.2d at 101; Broomfield, 212 N.E.2d at 556. Assalone also fostered Battaglia's perception that the bank was his financial advisor, by repeating that the bank's plans would benefit his business. See Stewart, 64 P.2d at 101; Lowmon, 161 N.E. at 675. Furthermore, the bank clearly knew of Battaglia's reliance. See Klein, 196 N.W.2d at 619; Pigg, 549 S.W.2d at 597.
Second, special circumstances transformed this lender/borrower relationship into a fiduciary one. See Tokarz, 656 P.2d at 1089. Assalone's role exceeded that of a lender in a traditional lender/borrower relationship. Not only did the bank advise Battaglia to expand his business and acquire Tellason's assets, but it also orchestrated and finalized the ultimate transaction. See id; Brasher, 168 So. at 42; Walters, 433 N.E.2d at 608; Dye, 1 Tenn. App. at 486; Hutson, 588 P.2d at 1192. Moreover, the bank received a greater economic benefit than from a typical transaction. See Tokarz, 656 P.2d at 1089; Barrett, 229 Cal. Rptr. at 16; Deist, 678 P.2d at 188. Battaglia's purchase of the assets of Tellason, a company verging on bankruptcy, relieved the bank of loss resulting from Tellason's non-performing loan. See Lowmon, 161 N.E. at 675; Brown, 181 N.W.2d at 178.
In addition, we find that the bank breached its fiduciary duties. A fiduciary owes to its beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the other party, and the duty to disclose material facts. See Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). "This of course, does not mean that the bank may not make a reasonable legitimate profit from the client, but it does mean that it cannot appeal to the doctrine of caveat emptor, and that it must disclose fairly and honestly to the client all the facts which might be presumed to influence him in regard to his actions." Stewart, 64 P.2d at 106.
First, the bank breached its fiduciary duty by taking unfair advantage and not acting in the best interest of Battaglia. See Smith v. Saginaw Sav. & Loan Ass'n, 94 Mich. App. 263, 288 N.W.2d 613 (1979); Deist, 678 P.2d at 188; Dye, 1 Tenn. App. at 486. Assalone knew that Battaglia's company was weak, that Battaglia lacked manufacturing experience, and that Tellason's equipment malfunctioned. Assalone should not have engineered the purchase transaction when it would further weaken Battaglia's company.
Second, the bank breached its fiduciary duty by not disclosing the nature of the appraisal upon which Battaglia relied. See Hooper, 498 So.2d at 923. Accord Brasher, 168 So. at 42; Lowmon, 161 N.E. at 675; Brown, 181 N.W.2d at 178; Walters, 433 N.E.2d at 608; Dye, 1 Tenn. App. at 486; Hutson, 588 P.2d at 1192. In Hooper, the bank officer concealed one customer's check-kiting scheme so that another customer would invest in the scheme. The bank officer was aware that the investment proceeds would be deposited in the bank and would therefore enable the bank to avoid a substantial overdraft caused by the check-kiter. The court held, at 498 So.2d at 925, that:
[W]here a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to the customer.
Here, the bank stood to benefit from the sale of Tellason's assets at Battaglia's expense. Without the sale, Tellason would have been unable to pay its debts to the bank. "[H]aving lured [its customer] into a borrowing transaction ... the bank dealt with [him] as [a] tool[] with which to alleviate the result of its own prior poor loan judgment." Brown, 181 N.W.2d at 184. See Lowmon, 161 N.E. at 675.
When Assalone showed Battaglia the appraisal of Tellason's assets, he failed to disclose the nature of the appraisal, that it was *521 a "walk-thru" (ballpark) appraisal, not a specific appraisal. The nature of the appraisal was peculiarly within the knowledge of the bank because the bank commissioned it. See Hooper, 498 So.2d at 923. This material fact was not otherwise available to Battaglia because he had no experience with appraisals and relied upon the bank. See id.
Accordingly, we recognize a fiduciary relationship between a bank and a customer where the bank knows or has reason to know of the customer's trust and confidence under circumstances exceeding an ordinary commercial transaction. See Stewart, 64 P.2d at 101; Barrett, 229 Cal. Rptr. at 16; Lowmon, 161 N.E. at 675; Klein, 196 N.W.2d at 619; Deist, 678 P.2d at 188; Tokarz, 656 P.2d at 1089; Hutson, 588 P.2d at 1192. Where the lender has voluntarily assumed additional roles, accompanying responsibilities properly follow. See Tokarz, 656 P.2d at 1089; see also Chotka v. Fidelco Growth Investors, 383 So.2d 1169 (Fla. 2d DCA 1980).

II
We next conclude that the conduct of the bank did not descend to the level of actual fraud. The record does not establish that the bank made a deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance to Battaglia. See First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536 (Fla. 1987).
Battaglia claims that Assalone misrepresented the sales price of Tellason's assets at $85,000, although the contract price was $109,917.03. However, Battaglia's reliance on an earlier representation of a price which conflicted with the contract price was not justifiable. See Englezios v. Batmasian, 593 So.2d 1077 (Fla. 4th DCA 1992).
Battaglia also argues that Assalone intentionally misrepresented the value of the Tellason equipment. While Assalone failed to voluntarily disclose the nature of the appraisal, there is no evidence that Assalone intentionally defrauded Battaglia. See Ablanedo, 511 So.2d at 536; Lance v. Wade, 457 So.2d 1008 (Fla. 1984). Assalone neither knew that the appraisal was false nor that the value of the equipment was other than as represented.
Finally, Battaglia alleges that the bank reneged on promises to fund future operations and to assign a mortgage. Yet, failure to perform a promise does not constitute fraud, unless the bank intended not to perform the contract at the time it was entered. Rogers v. Mitzi, 584 So.2d 1092 (Fla. 5th DCA 1991), review denied, 598 So.2d 77 (Fla. 1992); National Aircraft Servs., Inc. v. Aeroserv Int'l, Inc., 544 So.2d 1063 (Fla. 3d DCA 1989). The record is devoid of evidence that Assalone had a present intent at the time he made these promises not to keep them.

III
Turning to the issue of punitive damages, the trial court incorrectly denied the bank's motion for directed verdict. First, the bank has no direct corporate liability for punitive damages because there is no evidence of actual fraud. See Ablanedo, 511 So.2d at 536. There is also no evidence that the bank acted with malice, gross negligence or oppression which would justify punitive damages. See Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936).
Second, the bank was not vicariously liable for Assalone's actions. Assalone was not the managing agent or primary owner of the bank. See Bankers Multiple Line Ins. Co. v. Farish, 464 So.2d 530 (Fla. 1985). One of several bank vice-presidents, Assalone was not a member of the Board of Directors or the loan committee. Further, he was required to request loan committee approval of loans over his limit. See Mr. Furniture Warehouse, Inc. v. Barclays American/Commercial Inc., 919 F.2d 1517 (11th Cir.1990), cert. denied, 502 U.S. 815, 112 S.Ct. 68, 116 L.Ed.2d 43 (1991); Pier 66 Co. v. Poulos, 542 So.2d 377 (Fla. 4th DCA), review denied, 551 So.2d 462 (Fla. 1989); Eastern Air Lines, Inc. v. Gellert, 438 So.2d 923 (Fla. 3d DCA 1983).
We also find the bank lacked independent fault justifying vicarious liability for punitive damages. See Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). *522 No evidence was presented that the bank knew or should have known of Assalone's harmful course of conduct, see Life Ins. Co. of N. Am. v. Del Aguila, 417 So.2d 651 (Fla. 1982); Horizon Leasing v. Leefmans, 568 So.2d 73 (Fla. 4th DCA 1990), or that the bank had negligently hired or supervised him. See Puchner v. Drexel Burnham Lambert, Inc., 498 So.2d 550 (Fla. 3d DCA 1986); McArthur Dairy, Inc. v. Original Kielbs, Inc., 481 So.2d 535 (Fla. 3d DCA 1986).

IV
As to the first issue on cross-appeal, the trial court properly granted the bank's motion for judgment notwithstanding the verdict on its claim against MVB and Battaglia on the note and guaranty. Battaglia executed the $85,000 note in November 1986 in order to purchase Tellason's assets, and renewed it one year later. Thus, at the time of renewal, Battaglia had owned and used the equipment for one year. During that period, the machinery continually broke down.
The rule in Florida is that
One who gives a note in renewal of another note, with knowledge at the time of a partial failure of the consideration for the original note, or false representations by the payee, etc., waives such defense, and cannot set it up to defeat a recovery on the renewal note; and where one giving such renewal note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them and ascertained his rights, it became his duty to make such inquiry and investigation before executing the renewal note, and if he fails so to do he is as much bound as if he had actual knowledge thereof.
Storrs v. Storrs, 130 Fla. 711, 720-21, 178 So. 841, 845 (1937) (quoting Padgett v. Lewis, 54 Fla. 177, 177, 45 So. 29, 29 (1907)).
The issue of due diligence is one of fact and depends upon the length of time between the giving of the original and renewal notes, and also upon the ease or difficulty with which the maker could have discovered the alleged fraud or failure of consideration. Hurner v. Mutual Bankers Corp., 140 Fla. 435, 191 So. 831 (1939) (the signer of the renewal note could have readily ascertained the alleged fraud within one year).
Battaglia failed to exercise due diligence while possessing the machinery. Continual machinery breakdowns over the course of a one-year period put Battaglia on notice of the need to investigate the equipment's condition and value. See Hurner, 191 So. at 831; Frank v. Intercontinental Bank of Miami Beach, 372 So.2d 543 (Fla. 3d DCA 1979). MVB thus is liable on the note as is Battaglia on the guaranty.

V
We reverse, however, on the second issue raised by the cross-appeal. The trial court erred in denying Battaglia's motion to conform the verdict to the jury's intent where the clear intent of the jury was to award the amount MVB claimed as damages. See Balsera v. A.B.D.M. & P. Corp., 511 So.2d 679 (Fla. 3d DCA), review denied, 519 So.2d 986 (Fla. 1987). The damage expert testified that MVB alone suffered damages from the Tellason purchase in the amount of $571,139. In closing argument, counsel specifically asked the jury to award MVB the sum of $571,139 in damages, and did not request any specific amount of damages for Battaglia, individually, and Comare.
The jury, however, awarded $190,379 in compensatory damages to MVB, and awarded the same amount to Comare, and to Battaglia. All three awards totaled $571,137, only $2.00 less than the amount requested for MVB.
Where the aggregate award is supported by the evidence, the jury's apportionment of damages does not affect the integrity of the verdict. Phillips v. Ostrer, 481 So.2d 1241 (Fla. 3d DCA 1985), review denied, 492 So.2d 1334 (Fla. 1986). The aggregate award here is so close to the amount counsel requested and to which damage experts testified that it clearly indicates the jury's intent to follow Battaglia's suggestions in determining the amount of damages. See id.
In conclusion, we affirm the trial court's judgment for MVB on the claim of breach of fiduciary duty, but reverse on the claim of fraud and on the award of punitive damages. *523 We also affirm the judgments against MVB and Battaglia, individually, on the note and guaranty and reverse the denial of Battaglia's motion to conform the verdict. We therefore remand this cause to the trial court to enter judgment for MVB for compensatory damages of $571,137 plus prejudgment interest, and for Capital Bank on the $85,000 note and guaranty.
Affirmed in part; reversed and remanded in part.