[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10952
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-21127-MGC


ARBITRAJES FINANCIEROS, S.A.,
a Venezuelan corporation,

Plaintiff-Appellant,


versus


BANK OF AMERICA, N.A.,
a national banking association,
ROSEMONT FINANCE CORPORATION,
a dissolved Florida corporation,

Defendants-Appellees.



_____

No. 14-11167
Non-Argument Calendar
_____

D.C. Docket No.  1:12-cv-21367-MGC

INVIERTAL FINANCIAL MANAGERS, S.A.,
a Panamanian corporation,

                                                    Plaintiff-Appellant,

versus

BANK OF AMERICA, N.A.,
a national banking association,

                                                    Defendant-Appellee,

ROSEMONT FINANCE CORPORATION,
a dissolved Florida corporation,

                                                    Defendant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(March 26, 2015)

Before MARTIN, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

Arbitrajes Financieros, S.A, and Inviertal Financial Managers, S.A., appeal

the district court's dismissal of their complaints seeking damages against Bank of

America, N.A. (BANA).  After careful consideration of the parties' briefs, we

2

affirm the district court's order dismissing appellants' negligence and Florida Uniform Commercial Code claims because appellants have not established that they had a fiduciary relationship with BANA. We also affirm the district court's dismissal of the aiding-and-abetting claims, because appellants do not allege facts which plausibly suggest that BANA had actual knowledge of Rosemont's breach of fiduciary duty.

## I. Background

Appellants are foreign bond traders that specialize in the sale of Venezuelan Bolivar bonds, converting the proceeds into United States currency. Under state and federal guidelines, certain licenses and registrations are required to hold U.S. bank accounts. Without U.S. accounts, foreign companies like appellants must obtain the assistance of a licensed and registered fund transmitter to conduct their business. To that end, appellants entered into agreements with Rosemont Finance Corporation, a money transmission company. Rosemont represented to appellants that it had an ongoing relationship with BANA under which it had created accounts for other bond trading companies. Rosemont opened BANA bank accounts on behalf of Arbitrajes and Inviertal, in each case signing a "standard deposit agreement" that set forth the terms between Rosemont (the only named account holder) and BANA.

3

In March 2009, the United States Government seized both accounts as part of a money-laundering investigation.[1]  Appellants entered into settlements with the Department of Justice, by which they agreed to forfeit a portion of funds that were held in the BANA accounts.  This was because neither appellants nor Rosemont had the proper licenses or registration to hold the accounts.

In virtually identical actions, appellants sued BANA and Rosemont to recover their forfeited assets.[2]  Appellants seek to hold BANA liable for Rosemont's fraudulent actions, asserting claims for negligence, violation of the UCC, and aiding and abetting Rosemont's breach of fiduciary duty.  After permitting both appellants to amend their complaints, the district court granted BANA's motions to dismiss with prejudice because appellants failed as a matter of law to state any claim for relief against BANA.  Inviertal filed a Motion to Alter Judgment or, in the Alternative, for Leave to File Second Amended Complaint, which the district court denied as futile.  Appellants timely appealed.

## II. Negligence Claims

Appellants first challenge the district court's dismissal of their negligence claims.  To succeed, appellants must plead facts sufficient to establish that (1) BANA owed them a duty of care; (2) BANA breached that duty; (3) the breach caused their injury; and (4) they suffered damages.  See Miles v. Naval Aviation

---

[1] Rosemont's President later pleaded guilty to money laundering.

[2] Appellants allege diversity jurisdiction, and Florida law governs.

4

Museum Found., 289 F.3d 715, 722 (11th Cir. 2002).  Appellants claimed that

BANA's duty of care required it to "verify that all licensees and registrations were

up to date."  Under Florida law, a bank does not have a fiduciary relationship with

its standard deposit account customers, but instead owes only a duty of ordinary

care in arms-length transactions.  See First Nat'l Bank and Trust Co. of the

Treasurer Coast v. Pack, 789 So. 2d 411, 414 (Fla. 4th DCA 2001); Maxwell v.

First United Bank, 782 So. 2d 931, 934 (Fla. 4th DCA 2001).  This ordinary duty

does not require BANA to act for the benefit or protection of appellants, or to

disclose facts that appellants could have discovered through their own diligence.

See Maxwell, 782 So. 2d at 934.  Thus, under the duty of ordinary care, BANA

would not be required to verify Rosemont's licenses and registration.

Appellants insist they had a fiduciary relationship with BANA, which

required BANA to satisfy a heightened duty of care.  Fiduciary relationships can

be created expressly or impliedly under Florida law.  Capital Bank v. MVB, Inc.,

644 So. 2d 515, 518 (Fla. 3d DCA 1994).  Implied fiduciary relationships can arise

"when 'confidence is reposed by one party and a trust accepted by the other.'"  Id.

(quoting Dale v. Jennings, 90 So. 175, 179 (Fla. 1925)).  In considering whether a

fiduciary relationship exists, courts may also consider whether the bank "1) takes

on extra services for a customer, 2) receives any greater economic benefit than

5

from a typical transaction, or 3) exercises extensive control." Capital Bank, 644 So. 2d at 519.

Appellants do not claim to have an express fiduciary relationship with BANA. Indeed, the account agreements explicitly disclaim such a relationship: "[O]ur deposit relationship with you is that of debtor and creditor. This Agreement and the deposit relationship do not create a fiduciary, quasi-fiduciary or special relationship between us."

Neither did appellants adequately plead facts that show an implied relationship. To support their claim that extra services were provided, appellants point to specialized technology that BANA provided to allow appellants to make wire transfers more quickly than other customers. Yet the case appellants rely upon to support the idea that BANA took on "extra services" seems to require services that transform the relationship to "exceed [the role] of a lender," for example by offering advice or directly orchestrating non-banking transactions. Capital Bank, 644 So. 2d at 520. BANA's specialized technology does not reach this threshold.

To support their claim that BANA received a "greater economic benefit" that created a fiduciary relationship, appellants argue that BANA collected extra fees by retaining the interest on the account deposits instead of distributing it to appellants. However, during the time these account were on deposit, federal law

6

prohibited BANA from paying interest on appellants' accounts.  See 12 C.F.R. § 217.3 ("Regulation Q") (repealed July 21, 2011).  Thus, the "extra" fees appellants allege BANA received were in fact mandated by law.

Though appellants allege that they placed their trust in BANA, they point to no facts that show BANA, in turn, accepted appellants' confidence and trust. Appellants highlight certain conversations between BANA and Rosemont about the accounts, but they point to no conversations sufficient to create a fiduciary relationship between appellants and BANA.  Based on this lack of a fiduciary relationship with BANA, the district court rightly rejected appellants' negligence claims.

### III. UCC Claims

Count II of appellants' complaints alleges that BANA violated Article 4 of Florida's Uniform Commercial Code by not acting in good faith and exercising ordinary care with respect to the item it handles.  Fla. Stat. § 674.103(1).  Their UCC claims rely on the idea that BANA's duty of "ordinary care" encompasses an obligation to make sure that Rosemont had the proper licenses and registrations needed to serve as a registered fund transmitter for appellants.  However, Florida does not impose such a duty on banks for their non-fiduciary, ordinary customer

7

transactions.[3]  See Maxwell, 782 So. 2d at 934.  Appellants' UCC claims were therefore properly dismissed as well.

## IV. Aider and Abettor Liability

Under Florida law, appellants must establish four elements to succeed on their claim that BANA aided and abetted Rosemont's breach of fiduciary duty: (1) Rosemont owed a fiduciary duty to appellants; (2) which Rosemont breached; (3) BANA knew about Rosemont's breach; and (4) it substantially assisted with Rosemont's breach.  See In re Caribbean K Line, Ltd., 288 B.R. 908, 919 (S.D. Fla. 2002); Ft. Myers Dev. Corp. v. J.W. McWilliams Co., 122 So. 264, 268 (Fla. 1929).  The district court dismissed appellants' claims because they could not establish that BANA knew of any alleged breach, much less assisted with it.

Because each of these elements is required, and the failure of any one of them is decisive, we address only the third element requiring BANA's knowledge of Rosemont's breach.  Appellants allege only that BANA "had knowledge" of Rosemont's breaches of fiduciary duty—including Rosemont's representation to appellants that it had the proper licenses and registrations; Rosemont's telling appellants they did not need to register or get licenses; and Rosemont's failing to inform appellants that such licenses and registrations were required.  In support of this allegation, appellants allege that Rosemont "advised [BANA] that it

---

[3] We need not reach the question of whether appellants were customers of BANA, or whether BANA would have owed appellants this duty of care in the context of a fiduciary relationship.

8

committed the aforementioned acts prior to . . . open[ing] the [appellants']
[a]ccount[s]." At the same time, however, appellants' complaints allege that
Rosemont's former president "advised [BANA] that Rosemont was going to obtain
the appropriate money transmission license and registration . . . ." Of course
BANA could not have known about the breach if Rosemont hid its fraud by saying
it would get the registrations and licenses. Similar to the facts addressed by this
court in Lawrence v. Bank of America, N.A., 455 Fed. App'x 904, 907 (11th Cir.
2012) (per curiam), appellants point to no other facts showing that BANA had
actual knowledge of Rosemont's actions. Because appellants failed to sufficiently
allege BANA had actual knowledge of Rosemont's breach, the district court
properly dismissed their aiding and abetting claims as well.

**AFFIRMED.**