[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11735
_____

D.C. Docket No. 0:15-cv-61752-RNS


DEBORAH JOHNSON,
PAUL JOHNSON,
on behalf of themselves and all others similarly situated,

                                                        Plaintiffs-Appellants,

versus

CATAMARAN HEALTH SOLUTIONS, LLC,
f.k.a. Catalyst Health Solutions, Inc.,
f.k.a. HealthExtras, Inc.,
STONEBRIDGE LIFE INSURANCE COMPANY,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 2, 2017)

Before HULL and MARTIN, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

This case arises from a dispute over a health insurance plan with premiums plaintiffs allege to violate Florida law because they did not reasonably relate to the benefits provided by the plan. Insureds under the plan sued the two companies that jointly provided the insurance plan for declaratory relief and common-law damages under a variety of claims. The district court dismissed the entire action with prejudice, and the insureds appealed as to three of their claims. After careful consideration, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Catamaran Health Solutions, LLC ("Catamaran") is a limited liability company organized under Delaware law. In 1997, Catamaran coordinated with insurance companies to create the HealthExtras Benefit Program ("Benefit Program"), which consisted of two health insurance products packaged together as one group insurance policy. The two products were a disability benefit of $1,000,000 in the event of a permanent disability ("Disability Policy") and an emergency benefit that covered up to $2,500 in medical expenses in the event of accident or sickness ("Accident Policy"). The Accident Policy and the Disability Policy were each underwritten by one of several insurance companies.

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

Florida residents Deborah and Paul Johnson purchased the Benefits Program from Catamaran, and Stonebridge Life Insurance Company ("Stonebridge") underwrote their Disability Policy. The Johnsons allege the Benefit Program was an "out-of-state group health insurance plan." They also say Catamaran "acted as an insurance broker" to them "with respect to the Benefit Program."

The cost of the Benefit Program was about $2.30 per month per person, but Catamaran and Stonebridge (collectively, "the defendants") charged consumers $9.99 per month for the first insured and $4.50 per month for each additional person covered. In 2014, the defendants canceled the Benefit Program effective December 31, 2014.

In July 2015, the Johnsons filed an action against the defendants in Florida state court on behalf of a class of "individual Florida residents who owned, purchased or paid premiums for the Benefit Program from July 1, 1999 through [the present]." The Johnsons alleged that all class members had Disability Policies underwritten by Stonebridge and argued that the defendants charged premiums that were not reasonably related to the Benefit Program's benefits, in violation of Fla. Stat. § 627.6515. Based on the defendants' premiums, the Johnsons asserted claims for declaratory judgment, breach of contract, unjust enrichment, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, conversion, and civil conspiracy.

After removing the case to federal court, the defendants moved to dismiss the complaint.  The district court granted this motion.  In dismissing the case, the district court observed that "[e]ach of the Plaintiffs' theories of relief is premised on the argument that the Defendants violated Florida Statue [sic] § 627.6515."  It then ruled that § 627.6515 on its own does not require premiums to be reasonable in relation to benefits.  The Johnsons had argued alternatively to the district court that if § 627.6515 didn't require premiums to be reasonable in relation to benefits, then §§ 627.410, 627.411, and 627.640 did.  The district court rejected this argument as well.  Specifically, it found the Johnsons could not assert common law claims based on violations of these statutory provisions because none of the provisions contained either express or implied private rights of action.  As a result, the district court determined that it would be futile to allow the Johnsons to amend their complaint to include §§ 627.410, 627.411, and 627.640, and dismissed the action with prejudice.

The Johnsons appealed.  During the pendency of the appeal, the Johnsons reached a settlement with Catamaran.  As a result, only the Johnsons and Stonebridge filed appellate briefs.

## II. STANDARD OF REVIEW

"We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as

4

true and construing them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). We also review de novo the district court's interpretation of state law. Tampa Bay Water v. HDR Eng'g, Inc., 731 F.3d 1171, 1177 (11th Cir. 2013). However, we may affirm the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010).

### III. DISCUSSION

On appeal, the Johnsons argue the district court incorrectly dismissed with prejudice their breach of contract, unjust enrichment, and aiding and abetting a breach of fiduciary duty claims. We address each claim in turn.

A. BREACH OF CONTRACT

First, the Johnsons argue that certain statutory provisions can be incorporated into insurance contracts under Florida law. They say Fla. Stat. §§ 627.6515 and 627.410 require group health insurance products to have premiums that are reasonable in relation to benefits and these statutory provisions should be incorporated into their insurance contracts with Stonebridge. Thus, they assert that Stonebridge breached these contracts by charging unreasonably high premiums in violation of §§ 627.6515 and 627.410.

It is true that under Florida law, certain "statutory limitations and

5

requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights." Found. Health v. Westside EKG Assocs., 944 So. 2d 188, 195 (Fla. 2006).  And contrary to the district court's holding, even statutory provisions that contain neither express nor implied private rights of action can "form the basis for a breach of contract action by an insured."  Lutz v. Protective Life Ins. Co., 951 So. 2d 884, 887 (Fla. 4th DCA 2007); see Westside, 944 So. 2d at 194.  Stonebridge argues Westside and the statutory incorporation doctrine were abrogated by QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, 94 So. 3d 541 (Fla. 2012).  But because Chalfonte did not address any statutory incorporation claims, we decline to read it as a wholesale elimination of the statutory incorporation doctrine.

We recognize that in Westside, the Florida Supreme Court said the statutory provision in question there (Fla. Stat. § 641.3155) could be incorporated into an insurance contract because it "serves an integral role in providing substance or structure to the rights of subscribers and the responsibilities of [insurers]."  944 So. 2d at 196.  But even assuming the statutory provisions on which the Johnsons rely here (§§ 627.6515, 627.410, 627.411, and 627.640) do apply to the defendants, they do not play a similar "integral role" in the insured-insurer relationship.  Id. First, § 627.6515 does not require premiums to be reasonably related to benefits. Rather, it requires health plans to either charge premiums reasonably related to

benefits <u>or</u> comply with Part VII of Chapter 627 of the insurance code.  <u>See</u> Fla. Stat. § 627.6515(2).  Second, §§ 627.410 and 627.640 require insurers to file certain documents relating to their premiums with Florida's Office of Insurance Regulation ("OIR"), and § 627.410(7) requires insurers to "make an annual filling with the [OIR] . . . demonstrating the reasonableness of benefits in relation to premium rates."  On top of this, § 627.411(1)(f)(1) instructs the OIR to disapprove or withdraw approval of a health insurer's forms—thereby preventing the insurer from selling insurance in Florida—if the insurer's product "[p]rovides benefits that are unreasonable in relation to the premium charged."  Thus, although §§ 627.410, 627.411, and 627.640 do seem to embody a requirement that insurance products have premiums reasonably related to benefits, they explicitly entrust the enforcement of that requirement to the OIR.  This stands in stark contrast to the statute in <u>Westside</u>.  Instead of providing for administrative oversight and enforcement, that statute (§ 641.3155) directly requires the insurer to promptly pay claims to the provider.

Based on this comparison, it is clear that §§ 627.410, 627.411, and 627.640 do not serve the same direct "integral role in providing substance or structure" to the insured-insurer relationship that § 641.3155 does.  <u>See</u> <u>Westside</u>, 944 So. 2d at 196.  Thus, we decline to incorporate §§ 627.410, 627.411, and 627.640 into the insurance contracts at issue here.  As a result, even if Stonebridge charged

premiums that were unreasonable in relation to benefits, it did not breach any implied or express terms of its insurance contracts with the Johnsons.  We therefore affirm the dismissal of the Johnsons' breach of contract claim.

B.  UNJUST ENRICHMENT

Second, the Johnsons argue that if Stonebridge was not a party to the insurance contracts, then it was unjustly enriched from the premiums they paid because their premiums were not reasonably related to benefits.  They also assert that, unlike their breach of contract claim, this unjust enrichment claim is not based on any statutory violation.

Even assuming the Johnsons' unjust enrichment theory is completely independent of any statutory provision, we affirm the dismissal of their unjust enrichment claim because they failed to sufficiently plead unjust enrichment under Florida law.  To bring an unjust enrichment claim, a plaintiff must allege that: (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for defendant to retain the benefit without paying the value of the benefit to plaintiff.  Fito v. Attorneys' Title Ins. Fund, Inc., 83 So. 3d 755, 758 (Fla. 3d DCA 2011).  And as to the first element, the benefit conferred on the defendant must be a direct benefit.  See Kopel v. Kopel, ___ So. 3d ___, 2017 WL 372074, at *5 (Fla. Jan. 26, 2017); Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A., 667 So.

8

2d 876, 879 (Fla. 3d DCA 1996) (per curiam).  For example, in Extraordinary Title

Services, LLC v. Florida Power & Light Co., 1 So. 3d 400 (Fla. 3d DCA 2009), the

Third District Court of Appeal held that a plaintiffs' payments to a defendant's

subsidiary company did not constitute a direct benefit to the defendant even though

the defendant ultimately retained at least a portion of the payments.  Id. at 401,

404.  As a result, those payments could not support an unjust enrichment claim

against the defendant.  Id.; see also Kopel v. Kopel, 117 So. 3d 1147, 1152–53

(Fla. 3d DCA 2013), rev'd on other grounds, 2017 WL 372074 (Fla. Jan. 26, 2017)

(holding a plaintiff's payment of approximately $1.8 million into two corporations

in which the defendant had two-thirds ownership stakes constituted an "indirect"

benefit to the defendant that could not support an unjust enrichment claim).

Under their unjust enrichment theory, the Johnsons say they conferred a

benefit on Stonebridge by paying membership fees to Catamaran, who in turn paid

premiums to Stonebridge.  However, even if Stonebridge ultimately retained a

portion of the Johnsons' membership payments, Extraordinary Title and Kopel

indicate that the Johnsons conferred (at best) an indirect benefit on Stonebridge.

As a result, they cannot satisfy the first element of an unjust enrichment case, and

we affirm the district court's dismissal of this claim.

C.  AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY

The Johnsons' final argument is that (1) Catamaran owed a fiduciary duty to

9

them because it was their insurance broker; (2) Catamaran breached its fiduciary duty when it "t[ook] advantage of the 'inherent trust and confidence' that an insured (the princip[al]) places with an insurance broker" by "charging its princip[als] $15.99 per month for a Benefit Program that costs at most $2.30"; and (3) Stonebridge aided and abetted this breach of fiduciary duty.

We affirm the district court's dismissal of the Johnsons' aiding and abetting claim for two reasons. First, the Johnsons did not plead sufficient facts to support a plausible inference that they had a fiduciary relationship with Catamaran, without which no aiding and abetting claim against Stonebridge can be maintained. Under Florida law, "[f]iduciary relationships are either expressly or impliedly created." Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. 3d DCA 1994). Express fiduciary relationships are created either by contract or through legal proceedings. Id. In contrast, "[f]iduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." Id. Thus, in order to plead an implied fiduciary relationship, a plaintiff "must allege some degree of dependency on [the defendant] and some degree of undertaking [by the defendant] to advise, counsel, and protect the [plaintiff]." Watkins v. NCNB Nat'l Bank of Fla., N.A., 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993) (quotation omitted). Express fiduciary relationships can exist between insurance brokers and insureds, Moss v. Appel, 718 So. 2d 199, 201 (Fla. 4th DCA

10

1998), abrogated on other grounds, Wachovia Ins. Servs., Inc. v. Toomey, 944 So. 2d 980 (Fla. 2008), but only if they are created by contract or through legal proceedings. See Capital Bank, 644 So. 2d at 518. Here, the Johnsons did not allege that they contracted to receive brokerage services from Catamaran. They alleged only that Catamaran acted as an insurance broker. As a result, they failed to plead facts sufficient to show they had an express fiduciary relationship with Catamaran. Further, the Johnsons never mentioned any "degree of dependency" on Catamaran or any "degree of undertaking" by Catamaran to "advise, counsel, and protect" them. See Watkins, 622 So. 2d at 1065 (quotation omitted). Instead, they alleged only that Catamaran "solicited, marketed, collected premiums and administered the Benefit Programs and the Disability Policy to the Plaintiffs." Under Florida law, these facts are not enough to plead an implied fiduciary relationship with Catamaran. See id.

Second, even assuming the Johnsons had a fiduciary relationship with Catamaran, their claim still cannot survive the motion to dismiss. This is because the Johnsons fail to cite (and we could not find) any cases suggesting that breach of fiduciary duty claims in Florida can be premised on violations of statutes that contain neither express nor implied private rights of action. The Johnsons say their claim is not based on any statutory violation, but we are not persuaded. In order to prevail on their argument that Catamaran took advantage of their "inherent trust

11

and confidence" by charging disproportionately high premiums, the Johnsons must show that Catamaran's prices crossed some line separating exploitative premiums from acceptable premiums. The Johnsons do not identify any common-law duty or principle that draws such a line. Instead, they mention only one source of law that comes even close: the set of statutory provisions requiring premiums to be reasonably related to benefits—Fla. Stat. §§ 627.6515, 627.410, 627.411, and 627.640. Thus, the Johnsons' breach of fiduciary duty claim must be based on violations of those provisions. However, they do not argue §§ 627.6515, 627.410, 627.411, and 627.640 contain any private rights of action. They also do not argue that a plaintiff can bring a breach of fiduciary duty claim based on violations of statutes that lack private rights of action. Neither has our independent research produced any Florida cases supporting that proposition. As a result, we affirm the dismissal of the Johnsons' aiding and abetting a breach of fiduciary duty claim against Stonebridge.

## IV. CONCLUSION

For these reasons, we affirm the district court's dismissal of the Johnsons' breach of contract, unjust enrichment, and aiding and abetting a breach of fiduciary duty claims with prejudice.

**AFFIRMED.**