542 So.2d 377 (1989)
PIER 66 COMPANY, Clive Chu, Arthur Shad, and Patrick Blangy, Appellants,
v.
Jean POULOS and Phillips Petroleum Company, Appellees.
PHILLIPS PETROLEUM COMPANY, Appellant,
v.
Jean POULOS, Pier 66 Company, Patrick Blangy, Clive Chu, Arthur Shad, Appellees.
Nos. 87-1050, 87-1134.
District Court of Appeal of Florida, Fourth District.
March 29, 1989.
Rehearing and Rehearing Denied May 23, 1989.
*378 John Beranek of Klein & Beranek, P.A., West Palm Beach, and John R. Hargrove of Heinrich, Gordon, Batchelder, Hargrove, Weihe & Gent, Fort Lauderdale, for Pier 66 Co. Clive Chu, Arthur Shad and Patrick Blangy.
*379 Alan C. Sundberg and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, and William G. Paul, Gen. Counsel, John L. Williford, Associate Gen. Counsel, and Charles H. Purdy, Sr. Counsel, Bartlesville, Okl., for Phillips Petroleum Co.
Hugo L. Black, Jr., and Lauri Waldman Ross of Kelly, Black, Black, Byrne, Craig & Beasley, P.A., Miami, Milton P. Shafran, P.A., Tom Bush, and Ronald D. Poltorack, Fort Lauderdale, for appellee-Jean Poulos.
Rehearing and Rehearing En Banc Denied May 23, 1989.
STONE, Judge.
The defendants appeal a final judgment entered pursuant to a jury verdict awarding in excess of 2.8 million dollars in compensatory and punitive damages for wrongful discharge and defamation. We consolidate the separate appeals for this opinion.
The plaintiff, an employee in the sales department of the defendant hotel, served as a juror in a trial that lasted several weeks. Upon her return, she was fired by the defendant Blangy, the hotel sales director. Her discharge was then confirmed by the defendant Shad, the personnel director of Pier 66, who told her that the hotel president, the defendant Chu, acquiesced to this act by stating, "What's done is done." In a separate prosecution, Blangy and Pier 66 were held in contempt of court for firing the plaintiff because of jury service.
In the furor that followed her discharge, the hotel denied that the jury service was the cause of the Poulos dismissal. In a newspaper article concerning the incident, Mr. Chu was quoted as saying that "the timing of the firing `was very poor' but was bound to happen because Ms. Poulos `hasn't been working out' in her post as a sales representative."
Throughout the course of the trial, the plaintiff cried and sobbed continuously and uncontrollably. Her highly emotional conduct resulted in a record replete with interruptions and objections. On some occasions the jury had to be removed due to plaintiff's emotional state, and comments by the court confirm the unusual atmosphere that was created. The appellants' motions for mistrial were denied.
The appellants assert that the plaintiff's extreme conduct constituted an appeal to sympathy, passion and emotion. Counsel for the plaintiff was not only unable to control her, but refused to do so. He argued to the trial court that she had a right to cry because it was the demonstrable result of her being fired. Reference to the jurors' observations of her courtroom behavior was used by plaintiff's counsel in final argument.
Appellants point to various comments by plaintiff's counsel which, they contend, combined with the plaintiff's conduct, resulted in an unfair trial. They complain of several inflammatory remarks in opening and closing statements which were not objected to, and which alone would not rise to the level of fundamental error. Examples of such assertions included comments that the defendants had destroyed the plaintiff's brain, which, like Humpty Dumpty, could not be put back together, and statements that the plaintiff thought she was going insane, and that her broken heart could only bleed with her tears. Further, in opening statement plaintiff's counsel told the jury that an assistant state attorney would testify that when he spoke to Ms. Poulos following her discharge she looked "just like she had been raped." Plaintiff's counsel also engaged in attacks on the defendants' veracity, including the assertion that they had deliberately engaged in a cover up and a conspiracy to lie and falsify. These charges were coupled with attacks on corporations, urging that the jury use this occasion to send a message to others.
We recognize that emotional moments in the conduct of a party or the testimony of a witness are not unusual occurrences in the course of a trial, and that courts have a wide latitude in coping with such instances. But here the efforts by the trial court to resolve the problem met with failure, and the circumstances were compounded by the efforts of counsel to encourage, support, and capitalize on the plaintiff's disruptive emotionalism.
*380 The appellants contend that the following evidence and testimony was improperly admitted into evidence: (1) letters of indemnity from Phillips Oil to the three individual defendants, stating that Phillips would hold the Pier 66 employees harmless in exchange for their making themselves available as requested by counsel; (2) evidence of the prior criminal contempt convictions; (3) testimony by plaintiff's psychiatrist that the plaintiff had desperate thoughts of suicide because she could not be vindicated; (4) testimony by an employment expert that the effect of Poulos' firing and its publication was that plaintiff had essentially been "blackballed" in the industry; and (5) testimony by the assistant state attorney who initially interviewed the plaintiff. Regarding the last evidentiary issue, the witness testified:
I would describe [plaintiff] as someone that had been ___ in my experience in talking to rape victims of the approximately 150 cases I had been involved in where someone was raped and violated, she was extremely upset and mad and would just break down and start crying.
However, there was no objection made to this testimony, which is only considered by us on appellants' allegations of fundamental error.
The admission of the indemnity agreement was error. Cf. Erp v. Carroll, 438 So.2d 31 (Fla. 5th DCA 1983); Giddens v. State, 404 So.2d 163 (Fla. 2d DCA 1981). We recognize that this error would have been considered harmless error were it not for its role in the cumulative impact. Admitting the evidence of the criminal contempt conviction was also error. E.g. Boshnack v. World Wide Rent-A-Car, Inc., 195 So.2d 216 (Fla. 1967); Eggers v. Phillips Hardware Co., 88 So.2d 507 (Fla. 1956); Kelley v. Mutnich, 481 So.2d 999 (Fla. 4th DCA 1986). Granted, there is merit in appellee's argument that the "door" to its admission had been opened by earlier testimony by Phillips' in-house counsel that no one connected with the hotel had broken the law. That testimony, however, was specifically in response to questions concerning the propriety of the indemnity letters. And even if the door were considered open for some purposes, that earlier answer did not alone entitle the plaintiff to use it to introduce the jury to the prejudicial fact of the earlier criminal contempt convictions. Cf. Rodriguez v. State, 494 So.2d 496 (Fla. 4th DCA 1986).
The psychiatrist's testimony regarding the plaintiff's suicide thoughts indicated to the jury that if the plaintiff did not prevail in the action, she might kill herself, and thus was highly prejudicial. The admission of the employment expert's opinion that Poulos had essentially been blackballed was also erroneous, as there was no evidence presented in support of this conclusion. See Barnett Bank of East Polk County v. Fleming, 508 So.2d 718 (Fla. 1987); Peterson v. Georgia-Pacific Corp., 510 So.2d 1015 (Fla. 1st DCA 1987).
During closing argument, the plaintiff's lawyer repeatedly expressed his opinion that the defendants were liars. Such comments were improper, as they went far beyond simply asking the jury to consider whether they believed the witnesses' testimony and added to the risk of prejudice affecting the verdict. See S.H. Investment and Development Corp. v. Kincaid, 495 So.2d 768 (Fla. 5th DCA 1986), rev. denied, 504 So.2d 767 (Fla. 1987); Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), rev. denied, 488 So.2d 832 (Fla. 1986).
Upon our review of the record, we reverse because of the extensive emotionalism which pervaded the trial which, combined with inadmissible evidence and improper argument, resulted in unfair prejudice to the defense. Cf. Del Monte Banana Co. v. Chacon, 466 So.2d 1167 (Fla. 3d DCA 1985); Metropolitan Dade County v. Cifuentes, 473 So.2d 297 (Fla. 3d DCA 1985); Kane Furniture Corp. v. Miranda, 506 So.2d 1061 (Fla. 2d DCA), rev. denied, 515 So.2d 230 (Fla. 1987). See also Sanford v. Rubin, 237 So.2d 134 (Fla. 1970); Harbor Insurance Company v. Miller, 487 So.2d 46 (Fla. 3d DCA), rev. denied, 496 So.2d 143 (Fla. 1986); Borden, Inc. v. Young, 479 So.2d 850 (Fla. 3d DCA 1985), rev. denied, 488 So.2d 832 (Fla. 1986).
*381 Wrongful discharge and defamation issues are also raised on appeal. The appellees do not dispute that there was no evidence of defamation against either Blangy or Shad. Therefore, upon remand, a verdict should be directed on that issue as to those two defendants. However, as to their codefendant Chu, the court did not err by failing to direct the verdict on the defamation issue. Therefore, on remand the claims against Chu and his employer, Pier 66 may be retried.
On the wrongful discharge claim, the individual appellants contend that section 40.271, Florida Statutes, creating criminal and civil actions for discharging an employee for jury service, imposes liability only on the corporate employer. The statute provides:
40.271 Jury service. 
(1) No person summoned to serve on any grand or petit jury in this state, or accepted to serve on any grand or petit jury in this state, shall be dismissed from employment for any cause because of the nature or length of service upon such jury.
(2) Threats of dismissal from employment for any cause, by an employer or his agent to any person summoned for jury service in this state, because of the nature or length of service upon such jury may be deemed a contempt of the court from which the summons issued.
(3) A civil action by the individual who has been dismissed may be brought in the courts of this state for any violation of this section, and said individual shall be entitled to collect not only compensatory damages, but, in addition thereto, punitive damages and reasonable attorney fees for violation of this act.
This statute creates a new remedy for the wrong committed. In Blangy v. State, 481 So.2d 940 (Fla. 4th DCA 1985), rev. denied, 492 So.2d 1330 (Fla. 1986), this court found that the imposition of the contempt sanction against the individual agent of the corporation was proper under that statute. Reading the statute as a whole, we conclude that the individual agents of the employer may be held personally liable for their conduct in discharging a corporate employee for jury service. However, although there was evidence of a direct role by Blangy and, to some extent, Chu, there was no evidence of Shad's participation in the wrongful firing. His mere position in the corporate chain, alone, is not enough to impose liability where there was no evidence of his participation in the decision.
Additionally, Phillips Petroleum incurs no liability for punitive damages on either claim for wrongful discharge or defamation. Generally, there must be proof of employer fault in order to impose liability for punitive damages. Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla. 1981). No showing of independent fault is required where the corporate agent is in fact an owner or the managing agent of the corporation sought to be charged. See Bankers Multiple Line Insurance Co. v. Farish, 464 So.2d 530 (Fla. 1985). However, here the defendant Chu was only the hotel manager for Pier 66 Company; he was clearly not a managing agent of Phillips Petroleum Company. See also P.V. Construction Corp. v. Atlas Pools of the Palm Beaches, Inc., 510 So.2d 318 (Fla. 4th DCA 1987). Nor does Phillips incur punitive damage liability merely because its staff attorney may have offered legal advice to the hotel personnel involved. Therefore, on remand, the trial court shall direct a verdict in favor of Shad on the wrongful discharge claim and in favor of Phillips on all claims for punitive damages.
We also note that an additional ground exists for reversing the punitive damage claims against the individual defendants in that punitive damages were awarded in amounts that exceeded their assets. Arab Termite & Pest Control of Florida, Inc. v. Jenkins, 409 So.2d 1039 (Fla. 1982); Zambrano v. Devanesan, 484 So.2d 603 (Fla. 4th DCA), rev. denied, 494 So.2d 1150 (Fla. 1986).
With respect to the remaining defamation issues, we find no error in the denial of appellants' motions for directed verdict. Cf. Zambrano v. Devanesan; Eastern Airlines Inc. v. Gellert, 438 So.2d 923 (Fla. 3d DCA 1983). Additionally, the *382 court did not err in overruling appellants' objection to admission of the newspaper article for consideration in relation to an alleged admission made to a witness by the defendant, Chu. See § 90.803(18)(b), Fla. Stat. (1985). We make no determination regarding any jury instructions issue on defamation because the proper instruction will depend upon what evidence is presented in a new trial.
Therefore, the judgment is reversed and the cause remanded for further proceedings.
GUNTHER, J., and WEBSTER, PETER D., Associate Judge, concur.