DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KHULOUD HALUM,** Personal Representative of the
**ESTATE OF SALEH HALUM,** and **KHULOUD HALUM,** Individually,
Appellants,

v.

**ZF PASSIVE SAFETY SYSTEMS US, INC.** f/k/a
**TRW VEHICLE SAFETY SYSTEMS, INC.,**
Appellee.

No. 4D21-3217

[March 29, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James Nutt, Judge; L.T. Case No. 502016CA010271.

Daniel R. Hoffman and David J. Sales of David J. Sales, P.A., Sarasota, and Mara R.P. Hatfield of Searcy Denney Scarola Barnhart & Shipley, P.A., West Palm Beach, for appellants.

David R. Tippetts, Matthew E. Coveler, and Jason P. Hartman of Weinstein Tippetts & Little LLP, Houston, Texas, and Carri S. Leininger of Williams, Leininger & Cosby, PA, North Palm Beach, for appellee.

KLINGENSMITH, C.J.

Khuloud Halum, both individually and as personal representative of the Estate of Saleh Halum (collectively "appellants"), appeals the trial court's final summary judgment order in favor of ZF Passive Safety Systems US, Inc. ("Manufacturer"). Because appellants' lawsuit is barred by Florida's statute of repose, section 95.031(2)(b), Florida Statutes (2016), we affirm.

Appellants purchased their vehicle, a Lincoln Navigator, in June 2004. The vehicle was assembled and sold to the first user in June 2001, and used a seat belt buckle that was designed, manufactured, and constructed by Manufacturer. In 2015, Saleh Halum ("Victim") was involved in a car accident that ejected him from the vehicle. Victim's injuries allegedly resulted from a defect in the vehicle's seat belt buckle.

After the accident, appellants sued Manufacturer. The operative pleading, a third amended complaint, alleged one count of negligence, one count of strict product liability, and one count of loss of consortium. Appellants alleged the seat belt buckle produced by Manufacturer was defective—that the pushbutton had warped causing the belt to detach— and this defect caused Victim's injuries by not preventing his ejection from the vehicle. Manufacturer moved for summary judgment, arguing appellants' claims were barred by the statute of repose found in section 95.031(2)(b), because the accident occurred more than ten years after initial delivery of the vehicle to its first purchaser. However, to avoid the application of the statute of repose, appellants alleged Manufacturer was aware of the defect in 2001 and concealed the presence of the defect from the vehicle's maker and the National Highway Transportation and Safety Administration.

At the hearing on Manufacturer's summary judgment motion, appellants admitted they had not presented any evidence of the company's concealment derived from an executive-level employee of the Manufacturer.[1] Instead, appellants argued they only needed to present evidence from a manager with "authority and responsibility" over production of the seat belt pushbutton.

The trial court disagreed and entered final summary judgment in favor of Manufacturer. The court held appellants did not present sufficient evidence to identify an employee who constituted a managing agent under section 95.031(2)(d), finding the employees in question were only "mid-level managers." The court also found appellants did not meet their burden of proving "actual knowledge" of the alleged concealment of the claimed defect as required by section 95.031(2)(d). This appeal followed.

The standard of review for an entry of summary judgment is *de novo. Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Because final summary judgment was entered after May 1, 2021, this court applies the newly adopted federal summary judgment standard. *See Wilsonart, LLC v. Lopez*, 308 So. 3d 961, 964 (Fla. 2020) (stating that the amendment to rule 1.510(c) applies prospectively); *Tank Tech, Inc. v. Valley Tank Testing, L.L.C.*, 334 So. 3d 658, 660 n.1 (Fla. 2d DCA 2021) (holding that amendment to rule 1.510 did not apply because final judgment had been entered before the effective date of the change, May 1, 2021, and noting that the rule change applies prospectively). The

---

[1] Appellants' counsel conceded this point, stating, "Your Honor, we'll make it very easy in this regard. If we need to prove companywide executive decision-making, we haven't done that."

2

federal standard closely mirrors the standard for directed verdict, in which the focus of the analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perez v. Citizens Prop. Ins. Co.*, 345 So. 3d 893, 895 (Fla. 4th DCA 2022) (quoting *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 75 (Fla. 2021)). A fact is "material" if "it may affect the outcome of the case under the applicable substantive law." *Star Cas. Ins. Co. v. Gables Ins. Recovery, Inc.*, 346 So. 3d 1244, 1246 (Fla. 3d DCA 2022).

The statute of repose, section 95.031(2)(b), provides that a plaintiff may not "commence an action for products liability . . . if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser . . . ." However:

> *The repose period prescribed within paragraph (b) is tolled for any period during which the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect.* Any claim of concealment under this section shall be made with specificity and must be based upon substantial factual and legal support. Maintaining the confidentiality of trade secrets does not constitute concealment under this section.

§ 95.031(2)(d), Fla. Stat. (2016) (emphasis added). In contrast to a statute of limitations, which procedurally limits a plaintiff's remedy at some point after the cause of action accrued (i.e., after the defendant breached a duty), a statute of repose abolishes or eliminates an underlying substantive right of action.

Appellants do not dispute that they did not bring their products liability claim within twelve years of the original purchase of the vehicle. § 95.031(2)(b), Fla. Stat. (2016). Instead, appellants argue the repose period was tolled under section 95.031(2)(d), allowing their claim to proceed based upon testimony and evidence obtained from low-level and mid-level managers and supervisors employed by Manufacturer. Appellants do not contend that any officer or director of Manufacturer engaged in the conduct required by section 95.031(2)(d), and because Manufacturer is a corporation, Manufacturer has no "partners" as the term is used in business organizations. Instead, appellants maintain, without any specific identification of these individuals, that "[m]anagers and

3

executives" of several of Manufacturer's divisions knew about problems with the seat belt buckles and that "the issue was a varied issue and the parts could fail depending upon the day and the weather." Appellants also claim that certain statements made by these employees, whom they argue are "managing agents" under section 95.031(2)(d), create material issues of fact relating to the issue of willful corporate concealment.

Section 95.031 does not define the term "managing agent." However, Florida courts have expounded on who is—and who is not—a "managing agent" for the purposes of imposing corporate liability for punitive damages based on their acts. Those cases have found a managing agent must be "more than a mid-level employee who has some, but limited, managerial authority." *Wells Fargo Bank, N.A. v. Elec. Funds Transfer Corp.*, 326 So. 3d 753, 757 (Fla. 5th DCA 2021) (citing *Fla. Power & Light Co. v. Dominguez*, 295 So. 3d 1202, 1205 (Fla. 2d DCA 2019)).

In *Dominguez*, the Second District was asked to decide whether a regional supervisor in a company's "vegetation management program" was a "managing agent." 295 So. 3d at 1205. The district court found this employee was "at best a midlevel employee." *Id.* at 1206. The Second District noted the supervisor "was only in charge of the [vegetation] program for a limited geographical area," and that he did not "make policy decisions relating to the program" even though the employee did have "significant managerial power." *Id.* at 1206; *see also Cap. Bank v. MVB, Inc.*, 644 So. 2d 515, 521 (Fla. 3d DCA 1994) (finding a witness was not a managing agent because he was not a member of the Board of Directors and "was required to request loan committee approval of loans over his limit"). The Second District also noted that the employee had a manager of his own to whom he reported. *Dominguez*, 295 So. 3d at 1206.

The Fifth District reached a similar conclusion in *Wells Fargo*. There, the district court relied on *Dominguez* and likewise found "a mid-level employee with limited managerial authority" did not constitute a managing agent:

> A "managing agent" is an individual such as a president, primary owner, or other individual who holds "a position with the corporation which might result in his acts being deemed the acts of the corporation." *Dominguez*, 295 So. 3d at 1205 (quoting *Taylor v. Gunter Trucking Co.*, 520 So. 2d 624, 625 (Fla. 1st DCA 1988)); *see also Kent Ins. Co. v. Schroeder*, 469 So. 2d 209, 210 (Fla. 5th DCA 1985) ("[B]y virtue of his position as corporate president of Gags and the manager of the bar owned by Gags, the acts of McElfish are

4

indistinguishable from the acts of the corporation itself."); Ted C. Craig & Christopher N. Johnson, *When Is A Manager A Managing Agent?*, Fla. B.J., January 2001, at 62 ("[T]he body of [Florida] decisions on this issue consistently requires employees to exercise high-level, policymaking authority before they can expose their corporate employers to direct liability for punitive damages.").

*Wells Fargo*, 326 So. 3d at 757. Additionally, the Fifth District found it relevant that the employee did not participate "in the formation of company policy" and sought approval from his immediate supervisor before acting:

> Thus, many prior cases have established that a managing agent is more than a mid-level employee who has some, but limited, managerial authority. *See Dominguez*, 295 So. 3d at 1206 (holding that regional supervisor in FPL's vegetation management program, who had "significant managerial power" over regional program but did not make policy decisions, was not managing agent for purpose of establishing direct corporate liability for punitive damages); *Ryder Truck Rental, Inc. v. Partington*, 710 So. 2d 575, 576 (Fla. 4th DCA 1998) ("[A] job foreman is not, as required for imposing direct liability, a managing agent of the company."); *Cap. Bank v. MVB, Inc.*, 644 So. 2d 515, 521 (Fla. 3d DCA 1994) (holding bank vice president was not managing agent of bank for purposes of punitive damages because he was one of several vice presidents, was not member of board of directors or loan committee, and was required to request loan committee approval of loans over his limit); *see also Mr. Furniture Warehouse, Inc. v. Barclays Am./Com. Inc.*, 919 F.2d 1517, 1524 (11th Cir. 1990) (holding defendant's assistant vice president, who was subordinate to thirty vice presidents and senior vice presidents, was not managing agent; further observing assistant vice president did not participate in formation of company policy).

*Id.* at 757–58.

Federal courts have also reached the same conclusions in similar cases. *See, e.g., Romero v. Toyota Motor Corp.*, 916 F. Supp. 2d 1301, 1309 (S.D. Fla. 2013). In *Romero*, a plaintiff brought a products liability action against Toyota for a manufacturing defect—a weak roof that was susceptible to damage during rollovers—that caused the death of her unborn child. *Id.* at 1303. The court found the plaintiff's evidence did not

show the defect "was known by an officer, director, partner or managing agent, as is required by the statute." *Id.* at 1311 n.11 (citing § 95.031(2)(d)). Moreover, the plaintiff's witnesses did not have the sufficient "level of responsibility" to constitute a managing agent under section 95.031 because they "only had responsibility for discrete operations within the company, did not participate in the formation of company policy, and did not have an ownership stake." *Romero*, 916 F. Supp. 2d at 1311 n.11 (citing *Mr. Furniture Warehouse*, 919 F.2d at 1524, *cert. denied*, 502 U.S. 815 (1991)).

As the trial court correctly observed, when considered in its juxtaposition to the terms "officer," "director," and "partner" in the applicable statute, a "managing agent" under section 95.031(2)(d) must be an individual of such seniority and stature within the corporation or business to have ultimate decision-making authority for the company. *See Fayad v. Claredon Nat'l Ins. Co.*, 899 So. 2d 1082, 1088–89 (Fla. 2005) (noting the canon of *ejusdem generis* "provides that where general words follow an enumeration of specific words, the general words are construed as applying to the same kind or class as those that are specifically mentioned"). Like in *Dominguez, Wells Fargo*, and *Romero*, appellants here presented no evidence that the employees of Manufacturer on whose testimony appellants have relied ever "participated in the formation of company policy." *See Wells Fargo*, 326 So. 3d at 758; *Dominguez*, 295 So. 3d at 1206; *Romero*, 916 F. Supp. 2d at 1311 n.11. Further, despite the job titles held by appellants' witnesses, mere titles conferred on employees are insufficient to transform low-level and mid-level supervisors into managing agents of a company. *See, e.g., Pier 66 Co. v. Poulos*, 542 So. 2d 377, 381 (Fla. 4th DCA 1989) (awarding no corporate punitive damages on a defamation claim because hotel manager was not a "managing agent"), *review denied*, 551 So. 2d 462 (Fla. 1989). Therefore, these employees could not be managing agents for purposes of imputing corporate concealment to Manufacturer to avoid the application of section 95.031. *See id.*

Lastly, the trial court correctly found that appellants did not demonstrate a triable issue of fact on the element of "actual knowledge that the product was defective in the manner alleged by the claimant." § 95.031(2)(d), Fla. Stat. (2016). Appellants presented no evidence of affirmative steps taken by Manufacturer by and through a managing agent to conceal the alleged defect in the seat belt buckle. As the trial court observed in its final judgment:

> Harsh as it may be, it is not enough to argue they were negligent and should have known. The statute's requirement

6

of "actual knowledge" means what it says. "Actual knowledge" cannot be confused with the "should have known" standard applicable in negligence actions. *Romero*, 916 F. Supp. 2d at 1308–09. Here, the components of the seat belt buckle at issue were manufactured using equipment known as "Tool 2," which had passed the Production Part Approval Process and had been producing components since 2000. Plaintiffs' evidence focuses upon alleged defects in parts produced by "Tool 3." That components manufactured using Tool 3 were defective and *could* have resulted in inertial detachment that plaintiffs allege, such a defect in Tool 3 does not constitute "actual knowledge" that the same defects were present in the specific product in this case. Moreover, the evidence is that the defects were believed to have been addressed. And there is a dearth of evidence of inertial unlatching related to product made through the same tooling as the subject product. Finally, evidence is lacking that the addition of stiffening ribs was a remedial measure as opposed to improvement.

Even drawing every possible reasonable inference in favor of the appellants, *Moore v. Morris*, 475 So. 2d 666, 668 (Fla. 1985), we find the trial court did not err in granting Manufacturer's motion for summary judgment.

*Affirmed.*

WARNER and CIKLIN, JJ., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

7